IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BLACKBIRD TECH LLC d/b/a BLACKBIRD TECHNOLOGIES, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. No. 17-283-MSG |
| CLOUDFLARE, INC., | ) ) | |
| Defendant. | ) ) | |

## DEFENDANT CLOUDFLARE, INC.'S OPENING BRIEF
## IN SUPPORT OF MOTION TO TRANSFER VENUE

OF COUNSEL:
Steven Callahan
Anthony M. Garza
Grayson Cassada
CHARHON CALLAHAN ROBSON
 & GARZA, PLLC
3333 Lee Parkway, Suite 460
Dallas, TX 75219
(214) 521-6400

Jeffrey T. Castellano (No. 4837)
Andrew E. Russell (No. 5382)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jcastellano@shawkeller.com
arussell@shawkeller.com
*Attorneys for Defendant Cloudflare, Inc.*

Dated: June 20, 2017

# TABLE OF CONTENTS

I.  NATURE AND STAGE OF PROCEEDINGS ................................................................. 1

II.  SUMMARY OF THE ARGUMENT ............................................................................ 1

III.  STATEMENT OF FACTS ....................................................................................... 2

    A.  Cloudflare ......................................................................................................... 2

    B.  Blackbird ........................................................................................................... 4

    C.  The Inventor ...................................................................................................... 6

    D.  Prior-Art Witnesses .......................................................................................... 6

IV.  ARGUMENT ........................................................................................................ 8

    A.  Courts Should Transfer For Convenience And In The Interest Of Justice ..................... 8

    B.  Blackbird Could Have Brought The Case In The Northern District Of California ......... 9

    C.  The Private-Interest Factors Weigh Heavily In Favor Of Transfer ............................ 10

        1. Plaintiff's Forum Preference (Inapplicable) ............................................... 10

        2. Cloudflare's Forum Preference (Heavily Favors Transfer) ........................... 11

        3. Whether The Claim Arose Elsewhere (Heavily Favors Transfer) ................... 11

        4. Convenience Of The Parties (Heavily Favors Transfer) ............................... 12

        5. Convenience Of The Witnesses (Heavily Favors Transfer) ........................... 13

        6. Location Of Books And Records (Favors Transfer) ..................................... 16

    D.  The Public-Interest Factors Weigh Heavily In Favor Of Transfer ............................ 17

        1. Enforceability Of The Judgment (Neutral) ................................................ 17

        2. Practical Considerations That Could Make Trial Easy, Expeditious, Or Inexpensive (Heavily Favors Transfer) ..................................................... 17

        3. Administrative Difficulty Resulting From Court Congestion (Heavily Favors Transfer) ............................................................................................... 18

        4. Local Interest In Deciding Local Controversies At Home (Heavily Favors Transfer) ............................................................................................... 19

        5. Public Policies Of The Fora (Neutral) ...................................................... 19

        6. Familiarity With Applicable State Law In Diversity Cases (Inapplicable) ....... 19

    E.  The Parties' Delaware Incorporation Is Irrelevant ................................................ 20

V.  CONCLUSION ..................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

<span class="smallcaps">CASES</span>

*Blackbird Tech LLC v. TuffStuff Fitness, Int'l, Inc.*,
No. 16-CV-733, 2017 WL 1536394 (D. Del. Apr. 27, 2017)..........................................passim

*ChriMar Sys., Inc. v. Cisco Sys., Inc.*,
No. 11-CV-1050, 2013 WL 828220 (D. Del. Mar. 6, 2013) ..................................................16

*Cruise Control Techs. LLC v. Chrysler Group LLC*,
No. 12-CV-1755, 2014 WL 1304820 (D. Del. Mar. 31, 2014) ......................................passim

*Daimler AG v. Bauman*,
134 S. Ct. 746 (2014)..........................................................................................................10

*Endeavor Meshtech, Inc. v. Itron, Inc.*,
No. 13-CV-1343, 2014 WL 11788638 (D. Del. June 4, 2014)....................................12, 15, 16

*GBForefront, L.P. v. Forefront Mgmt. Grp. LLC*,
No. 11-CV-7732, 2012 WL 4050799 (E.D. Pa. Sept. 14, 2012) .............................................9

*In re Acer Am. Corp.*,
626 F.3d 1252 (Fed. Cir. 2010)............................................................................................17

*In re Genentech, Inc.*,
566 F.3d 1338 (Fed. Cir. 2009).......................................................................................15, 16

*In re Google*,
2017 WL 977038 ...............................................................................................................19

*In re Hoffmann-La Roche Inc.*,
587 F.3d 1333 (Fed. Cir. 2009).......................................................................................11, 19

*In re Link_A_Media Devices Corp.*,
662 F.3d 1221 (Fed. Cir. 2011).............................................................................10, 16, 19, 20

*In re Microsoft Corp.*,
630 F.3d 1361 (Fed. Cir. 2011)............................................................................................10

*In re Nintendo Co.*,
589 F.3d 1194 (Fed. Cir. 2009)............................................................................................16

*In re TS Tech USA Corp.*,
551 F.3d 1315 (Fed. Cir. 2008)............................................................................................17

*In re WMS Gaming Inc.*,
564 F. App'x 579 (Fed. Cir. 2014) .......................................................................................13

*In re Zimmer Holdings, Inc.*,
609 F.3d 1378 (Fed. Cir. 2010)...............................................................................10

*Ithaca Ventures k.s. v. Nintendo of Am. Inc.*,
No. 13-CV-824, 2014 WL 4829027 (D. Del. Sept. 25, 2014)................................10

*Jumara v. State Farm Ins. Co.*,
55 F.3d 873 (3d Cir. 1995)................................................................8, 9, 16, 17, 20

*Kirschner Bros. Oil, Inc. v. Pannill*,
697 F. Supp. 804 (D. Del. 1988)......................................................................16, 20

*Linex Techs., Inc. v. Hewlett-Packard Co.*,
No. 11-CV-400, 2013 WL 105323 (D. Del. Jan. 7, 2013).........................15, 17, 18

*Minstar, Inc. v. Laborde*,
626 F. Supp. 142 (D. Del. 1985)..............................................................................12

*MoneyCat Ltd v. PayPal Inc.*,
No. 13-CV-1358, 2014 WL 2042699 (D. Del. May 15, 2014)............................11, 12, 16, 17

*Roudabush v. Rondo, Inc.*,
No. 14-CV-6523, 2015 WL 12844273 (E.D. Pa. Feb. 4, 2015) ...............................11

*Sherwood Med. Co. v. IVAC Med. Sys., Inc.*,
No. 96-CV-305, 1996 WL 700261 (D. Del. Nov. 25, 1996)............................12, 15

*Solomon v. Cont'l Am. Life Ins. Co.*,
472 F.2d 1043 (3d Cir. 1973)...........................................................................12, 15

*Stewart Org., Inc. v. Ricoh Corp.*,
487 U.S. 22 (1988)......................................................................................................9

*TC Heartland LLC v. Kraft Foods Gr. Brands LLC*,
No. 16-341, 2017 WL 2216934 (U.S. May 22, 2017)..............................................10

*Tessera, Inc. v. Broadcom Corp.*,
No. 16-CV-379, 2017 WL 1065865 (D. Del. Mar. 21, 2017) ......................9, 11, 15

**STATUTES**

28 U.S.C. § 84(a) ...............................................................................................................10

28 U.S.C. § 1338(a) ...........................................................................................................10

28 U.S.C. § 1400(b) ...........................................................................................................10

28 U.S.C. § 1404 .................................................................................................................8

35 U.S.C. § 102(a) .......................................................................................7

35 U.S.C. § 102(b) .......................................................................................7

35 U.S.C. 271(a) ........................................................................................10

Cal. Civ. Proc. Code § 410.10 ...................................................................10

**OTHER AUTHORITIES**

Fed. R. Civ. P. 45(c) ............................................................................13, 15

Defendant Cloudflare, Inc. requests transfer to the Northern District of California.

## I.    NATURE AND STAGE OF PROCEEDINGS

This a patent-infringement case filed by Plaintiff Blackbird Tech LLC d/b/a Blackbird Technologies on March 16, 2017. *See* D.I. 1, Compl. The case is in its early stages. On May 19, 2017, Blackbird filed its First Amended Complaint, which Cloudflare answered on June 2, 2017. D.I. 13, 15. The parties have not sought discovery, nor has the Court entered a case schedule. The Court will hold the Rule 16 Conference on August 30, 2017. D.I. 16.

## II.    SUMMARY OF THE ARGUMENT

The Northern District of California maintains strong ties to this case. The Northern District is home to Cloudflare, its witnesses, relevant third parties, and evidence. The District of Delaware, in contrast, has no similar connection to the case. Blackbird is based in Massachusetts, it has no employees or activity in Delaware (other than its 106 other patent-infringement lawsuits), the inventor lives in Germany, and not a single relevant witness or document is in Delaware. Admittedly, Cloudflare incorporated itself in Delaware, but the Federal Circuit has held that a party's state of incorporation is not a factor in the § 1404(a) transfer analysis.

Here, an analysis of the transfer factors shows that eight factors weigh in favor of transfer, and none weigh against transfer. In this regard, the case is similar to *Blackbird Tech LLC v. TuffStuff Fitness, Int'l, Inc.*, No. 16-CV-733, 2017 WL 1536394 (D. Del. Apr. 27, 2017), where Judge Sleet recently transferred two of Blackbird's other lawsuits from Delaware to California after concluding that the interests of convenience and justice strongly favored transfer—even when the inventor in those cases resided in Delaware. Because convenience and justice overwhelming favor transfer in this case, the Court should transfer the lawsuit to the Northern District of California.

## III.     STATEMENT OF FACTS

### A.     Cloudflare

1.      Founded in 2009, Cloudflare is a Delaware corporation with its principal place of business in San Francisco, California. *See* Declaration of Chris Merritt dated June 19, 2017 ("Merritt Decl.") ¶ 4. Cloudflare provides content-delivery, proxy, and DNS services to customers in the United States and around the world. *Id.*

2.      Blackbird accuses Cloudflare of infringing U.S. Patent No. 6,453,335 (the "'335 patent"), because Cloudflare uses intermediary servers to communicate with customers, receive error codes, and transmit error pages to internet users. D.I. 13, First Am. Compl. ¶¶ 7, 15, 20. In general, when a customer signs up and activates Cloudflare's services, internet users cease connecting with customer servers—instead, internet users are directed to an IP address that establishes a connection to a Cloudflare server. Merritt Decl. ¶ 6. These servers are responsible for much of the accused functionality. *Id.* Cloudflare maintains these servers at 115 "data centers" around the world. *Id.*

3.      Cloudflare designed and developed its services in San Francisco. *Id.* ¶ 7. Cloudflare employees responsible for implementing the accused functionality work in San Francisco. *Id.* Cloudflare uses the accused functionality from its regular and established place of business in San Francisco. *Id.*

4.      Cloudflare has identified the following employees as having knowledge of relevant facts supporting Cloudflare's claims or defenses:

- ▪ **Usman Muzaffar**: Mr. Muzaffar is Cloudflare's Head of Engineering. He has technical knowledge concerning the servers in Cloudflare's data centers and the accused functionality. Mr. Muzaffar is based in San Francisco.

- **Trey Guinn**: Mr. Guinn is a Solutions Engineer at Cloudflare. He has technical knowledge concerning the servers in Cloudflare's data centers and the accused functionality. Mr. Guinn is based in San Francisco.

- **Chris Jones**: Mr. Jones is responsible for financial planning and analysis at Cloudflare. He has knowledge of Cloudflare's revenue and financial information, as well as Cloudflare's accounting system. Mr. Jones is based in San Francisco.

- **Sylvia Kuyel**: Ms. Kuyel is a Customer Success Engineer at Cloudflare, and has knowledge of Cloudflare's marketing and sales, including sales strategies, sales processes, and customer demand. Ms. Kuyel is based in San Francisco.

- **Chris Merritt**: Mr. Merritt is Cloudflare's Chief Revenue Officer. He has knowledge of Cloudflare's sales and revenue, as well as Cloudflare's history and growth. Mr. Merritt is based in San Francisco.

*Id.* ¶ 8.

5.     Certain former San Francisco based employees of Cloudflare also have knowledge of relevant facts. *Id.* ¶ 9. For example, Rajeev Sharma and Matthieu Tourne worked for Cloudflare as Systems Engineers. *See* Declaration of Rajeev D. Sharma dated June 6, 2017 ("Sharma Decl.") ¶ 3; Declaration of Matthieu P. Tourne dated June 16, 2017 ("Tourne Decl.") at 1. Messrs. Sharma and Tourne worked on processes related to the servers in Cloudflare's data centers. Sharma Decl. ¶ 5; Tourne Decl. at 1-2. They both live in the San Francisco area. *See* Sharma Decl. ¶ 2; Tourne Decl. at 1. Neither Mr. Sharma nor Mr. Tourne would travel to Delaware to testify at trial. *See* Sharma Decl. ¶ 6; Tourne Decl. at 2.

6.     Cloudflare has 87 paying customers with billing addresses in Delaware, out of 41,555 total paying customers (i.e., about 0.2% of Cloudflare's paying customers are based in Delaware). Merritt Decl. ¶ 10. Cloudflare has 4,565 paying customers with billing addresses in California. *Id.* Approximately 0.25% of Cloudflare's United States revenue comes from Delaware-based customers, and approximately 0.1% of Cloudflare's global revenue comes from Delaware-based customers. *Id.*

7.      Cloudflare has offices in San Francisco, California (266 employees); London, United Kingdom (94 employees); Singapore (27 employees); Austin, Texas (18 employees); Champaign, Illinois (4 employees); Boston, Massachusetts (3 employees); and Washington, D.C. (2 employees). *Id.* ¶ 11. Cloudflare has no offices or employees in Delaware. *Id.*

8.      Cloudflare has 22 data centers in the United States. *Id.* ¶ 12. Three are in California (San Diego, San Jose, and Los Angeles). *Id.* None are in Delaware. *Id.*

9.      Relevant financial, technical, sales, and marketing documents are located at Cloudflare's headquarters in San Francisco. *Id.* ¶ 13. Cloudflare does not maintain any documents in Delaware. *Id.*

10.      Cloudflare prefers to litigate this case in the Northern District of California, the location of its principal place of business. *Id.* ¶ 14. Litigating in the Northern District will cost Cloudflare much less than litigating in Delaware. *Id.* For example, a California (as opposed to a Delaware) trial will allow Cloudflare to save money because Cloudflare will not have to pay its employees' travel expenses (e.g., hotel, airfare, meal, and car-rental fees). *Id.* Cloudflare's employees could also work from Cloudflare's office during their downtime at trial, resulting in increased efficiency. *Id.* Further, litigating the case in the Northern District would avoid travel and allow the employees to spend more time with their families. *Id.*

### B.      Blackbird

11.      Blackbird is a Delaware LLC formed on July 1, 2014.[1] Ex. 1. Its principal place of business is in Massachusetts. D.I. 1, Compl. ¶ 1 (stating that Blackbird's principal place of business is in Concord, Massachusetts); Ex. 2, Freeman Decl. ¶ 3 ("Blackbird is based in Boston

---

[1]      The Declaration of Grayson Cassada dated June 20, 2017, authenticates all exhibits attached hereto.

and Concord, Massachusetts[.]").

12.     Blackbird makes no products. Instead, it exists to acquire patents and file patent-infringement lawsuits. Ex. 2, Freeman Decl. ¶ 4; Ex. 3, Blackbird's "About Us" Page.

13.     Blackbird's founders are lawyers Wendy Verlander and Chris Freeman. Ex. 3; Ex. 4, Freeman Biography; Ex. 5, Verlander Biography. According to Blackbird, "[i]n addition to the founders, Blackbird Technologies has assembled a group of litigators from some of the best patent litigation groups in the country." Ex. 3. Blackbird's "team" includes four Senior Litigation Counsel and six employees in the Patent Analysis Group. Ex. 11, Blackbird's "The Team" Page. No Blackbird employee lives in Delaware.

| Name | Position | Lawyer? | Residence |
|---|---|---|---|
| Wendy Verlander | President / CEO [Ex. 5] | Yes, admitted in New York and Massachusetts [Ex. 5] | Massachusetts [Ex. 12] |
| Chris Freeman | VP / Head of Litigation [Ex. 4] | Yes, admitted in Illinois [Ex. 4] | Illinois [Ex. 13] |
| Deborah Yates | Senior Litigation Counsel [Ex. 6] | Yes, admitted in Virginia and Washington, D.C. [Ex. 6] | California [Ex. 14] |
| Sean Thompson | Senior Litigation Counsel [Ex. 7] | Yes, admitted in Massachusetts and New York [Ex. 7] | Massachusetts [Ex. 15] |
| John Handy | Senior Litigation Counsel [Ex. 8] | Yes, admitted in New York and New Jersey [Ex. 8] | Massachusetts [Ex. 16] |
| David Gerasimow | Senior Litigation Counsel [Ex. 9] | Yes, admitted in Minnesota and Illinois [Ex. 9] | Massachusetts [Ex. 17] |
| Dan Harris | Counsel—Patent Analysis Group [Ex. 10] | Yes, admitted in Massachusetts [Ex. 10] | Massachusetts [Ex. 18] |
| John Gendi | Patent Analyst [Ex. 11] | No [Ex. 11] | Massachusetts [Ex. 19] |
| Ashley Hartman | Patent Analyst [Ex. 11] | No [Ex. 11] | Massachusetts [Ex. 20] |
| Megan McKnelly | Patent Analyst | No | Massachusetts |

| | [Ex. 11] | [Ex. 11] | [Ex. 11] |
|---|---|---|---|
| Vineet Vallam | Patent Analyst [Ex. 11] | No [Ex. 11] | Massachusetts [Ex. 21] |
| Tammy Wu | Patent Analyst [Ex. 11] | No [Ex. 11] | Massachusetts [Ex. 22] |

14.     Approximately two months after its founding, Blackbird began filing patent-infringement cases in the District of Delaware. Ex. 23. In its less than three years in existence, Blackbird has filed over 100 separate lawsuits, making it one of the most prolific non-practicing entities in the United States. *Id.*; Ex. 24 (characterizing Blackbird as one of the top four filers of patent-infringement lawsuits in 2016). Its 107 lawsuits include cases against Amazon, Vermont Juvenile Furniture Manufacturing, PetSense, Shapers Unlimited, and Lenovo, and purport to cover technologies such as digital video, LED lighting, "buttock lift supports," "bicycle pet carriers," tow brakes, pedometers, exercising monitoring, and sport bras. Ex. 23; Ex. 24.

### C.     The Inventor

15.     The named inventor of the '335 patent is Oliver Kaufmann. D.I. 1, Compl. Ex. A, '335 patent. Mr. Kaufmann lives in Germany. *Id.*; Ex. 25, Assignment. He assigned the '335 patent to Blackbird on October 3, 2016, for "one dollar ($1.00) and other good and valuable consideration[.]" Ex. 25, Assignment. Mr. Kaufman used Gates & Cooper LLP, a law firm in Los Angeles, California, to prosecute his patent. D.I. 1, Compl. Ex. A, '335 patent; Ex. 60, Gates & Cooper "Contact Us" Page.

### D.     Prior-Art Witnesses

16.     Although it is very early in the case, Cloudflare has begun identifying prior-art references. Those references and associated witnesses include:

- *World-Wide Web Proxies*, by Ari Loutonen (San Francisco) and Kevin Altis (Portland, Oregon), discloses a proxy that examines incoming messages from a server and converts them to HTTP messages, when appropriate. Ex. 26 at 2-4; Ex. 27; Ex. 28.

- *Intermediaries: New Places for Producing and Manipulating Web Content*, from IBM Almaden Research Center (San Jose, California), discloses intermediary servers that "observe, respond to requests, and modify both the request and the resulting documents." Ex. 29 at 1.

- U.S. Patent No. 5,933,811, to Paul Angels (Los Angeles) and Douglas Blattner (Redondo Beach, California), discloses an intermediary server that reviews communications, generates a "custom advertisement based on the consumer's profile," and provides it to the consumer. Ex. 30 at Abstract.

- U.S. Patent No. 5,826,025, to Wayne Gramlich (San Francisco) and Sun Microsystems (now Oracle, in Santa Clara, California), discloses an "annotation proxy server" that "intercepts all documents" and "merges" the documents with third-party commentary. Ex. 31 at Abstract; Ex. 32; Ex. 33; *see also* Ex. 34, U.S. Patent No. 5,822,539 (another Sun Microsystems patent disclosing an "annotation proxy," to Arthur van Hoff (Mountain View, California)); Ex. 35.

- U.S. Patent No. 5,937,404, to Andras Csaszar (Los Altos, California), Stephen Friedman (Mountain View, California), and Gabor Ligeti (Budapest, Hungary), discloses a dedicated server that monitors links transmitted to users, and modifies those links to require future communications to pass through the dedicated server. Ex. 36 at Abstract, 3:5-15.

- U.S. Patent No. 6,115,384, to Matthew Parzych (San Francisco), discloses an S_Gate application that analyzes a communication intended for a user and modifies the communication to satisfy a bandwidth-efficient protocol. Ex. 37 at 3:28-46.

Cloudflare attaches, at Exhibit 38, a chart showing how each of the above references includes disclosures relevant to Claim 1 of the '335 patent. Cloudflare believes that these references are likely to be germane to its invalidity case on summary judgment and at trial.

17.    Many of the prior-art references identified above do not qualify as prior art under 35 U.S.C. § 102(b). As a result, Cloudflare intends to investigate whether the witnesses identified above have evidence showing domestic use of the disclosed systems prior to the filing of the '335 patent, to establish the systems as prior art under 35 U.S.C. § 102(a). These third parties' credibility may determine the outcome of the litigation, and a jury should hear that testimony live, if possible.

18.    Further, many engineers, academics, and companies in or near the Northern Dis-

trict of California were working with caching proxy services before the '335 patent was filed, and thus are likely to have additional information about invalidating prior-art systems. For example:

- The article *Performance Issues of Enterprise Level Web Proxies*, by Carlos Maltzahn (Santa Cruz, California), Kathy Richardson (Palo Alto, California), and Dirk Grunwald (Boulder, Colorado), discloses the results of testing of Digital Equipment Corporation's web proxy server in Palo Alto, California. Ex. 39; Ex. 40; Ex. 41; Ex. 42. (Compaq acquired Digital Equipment Corporation in 1998. Ex. 43. HP (based in Palo Alto, California), in turn, acquired Compaq in 2002. Ex. 44.)

- Microsoft Corporation (Redmond, Washington) introduced Microsoft Proxy Server 1.0 in 1996, which was a server designed to intercept communications and work with various firewalls and content-filtering products. Ex. 45 at 2; *see also* Ex. 46, U.S. Patent No. 5,991,306, to Gregory Burns (Carnation, Washington) and Paul Leach (Seattle) at Microsoft, which discloses another caching proxy server; Ex. 47.

- An article by Ron Lee (Provo, Utah) at Novell, now Micro Focus (Provo, Utah), disclosed a product called BorderManager, a proxy server operated by Novell that cached requests to its website. Ex. 48 at 2; Ex. 49.

- The article *Exploring the Bounds of Web Latency Reduction from Caching and Prefetching*, by Thomas Kroeger (Santa Cruz, California), Darrell Long (Santa Cruz, California), and Jeffrey Mogul (San Francisco), discloses the testing results of caching and prefetching of web proxies. Ex. 50; Ex. 51; Ex. 52; Ex. 53.

Cloudflare intends to investigate these uses of intermediate web servers and their related services, and present the resulting evidence as prior art under (at least) § 102(a).

## IV. ARGUMENT

### A. Courts Should Transfer For Convenience And In The Interest Of Justice

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought[.]" 28 U.S.C. § 1404(a). In the Third Circuit, there is "no definitive formula or list of [transfer] factors to consider" but courts have considered "many variants of the private and public interests protected by the language of § 1404(a)." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873,

879 (3d Cir. 1995).

Private interests that the Court may properly consider include

> [i] plaintiff's forum preference as manifested in the original
> choice; [ii] the defendant's preference; [iii] whether the claim
> arose elsewhere; [iv] the convenience of the parties as indicated by
> their relative physical and financial condition; [v] the convenience
> of the witnesses—but only to the extent that the witnesses may ac-
> tually be unavailable for trial in one of the fora; and [vi] the loca-
> tion of books and records (similarly limited to the extent that the
> files could not be produced in the alternative forum).

*Jumara*, 55 F.3d at 879 (citations omitted). Public interests may include

> [i] the enforceability of the judgment; [ii] practical considerations
> that could make the trial easy, expeditious, or inexpensive; [iii] the
> relative administrative difficulty in the two fora resulting from
> court congestion; [iv] the local interest in deciding local controver-
> sies at home; [v] the public policies of the fora; and [vi] the famili-
> arity of the trial judge with the applicable state law in diversity
> cases.

*Id.* at 879-80 (citations omitted). "Section 1404(a) is intended to place discretion in the district

court to adjudicate motions for transfer according to an 'individualized, case-by-case considera-

tion of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)

(quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).

### B.     Blackbird Could Have Brought The Case In The Northern District Of California

"The first step in the transfer analysis is to determine whether this action could have been

brought in the proposed transferee venue." *Tessera, Inc. v. Broadcom Corp.*, No. 16-CV-379,

2017 WL 1065865, at *4 (D. Del. Mar. 21, 2017); *see also GBForefront, L.P. v. Forefront

Mgmt. Grp. LLC*, No. 11-CV-7732, 2012 WL 4050799, at *1 (E.D. Pa. Sept. 14, 2012). Because

Cloudflare's regular and established (indeed, principal) place of business is in the Northern Dis-

trict of California (i.e., San Francisco), and it uses the accused functionality there, Blackbird

could have filed suit there.[2]

## C. The Private-Interest Factors Weigh Heavily In Favor Of Transfer

An analysis of the private-interest factors demonstrates that it would be much more convenient for the parties to litigate the case in the Northern District of California.

### 1. Plaintiff's Forum Preference (Inapplicable)

Blackbird will presumably assert that it prefers to litigate in Delaware because Delaware is its place of incorporation. But Blackbird incorporated in Delaware shortly before filing its first patent-infringement case. *See* SOF ¶¶ 11, 14. The transfer inquiry does not consider such steps taken in anticipation of litigation, so the Court should find this factor inapplicable.[3] Regardless, Massachusetts—not Delaware—is Blackbird's home forum. *Id.* ¶ 11. As such, Blackbird's preference (if of any import) has little weight. *See, e.g.*, *In re Link_A_Media Devices Corp.*, 662 F.3d 1221, 1223 (Fed. Cir. 2011) (plaintiff's choice of forum is "entitled to less deference" when "a plaintiff brings its charges in a venue that is not its home forum") (applying Third Circuit law);

---

[2] *See* Statement of Facts ("SOF") ¶¶ 1-3; 35 U.S.C. § 271(a); 28 U.S.C. § 1400(b) (patent-infringement suits may be brought in judicial districts "where the defendant has committed acts of infringement and has a regular and established place of business"); *TC Heartland LLC v. Kraft Foods Gr. Brands LLC*, No. 16-341, 2017 WL 2216934, at *3 (U.S. May 22, 2017); *Daimler AG v. Bauman*, 134 S. Ct. 746, 760 (2014) (principal place of business creates basis for general personal jurisdiction); 28 U.S.C. § 1338(a); 28 U.S.C. § 84(a); Cal. Civ. Proc. Code § 410.10.

[3] *See, e.g.*, *In re Microsoft Corp.*, 630 F.3d 1361, 1364-65 (Fed. Cir. 2011) (discounting plaintiff's incorporation sixteen days before filing suit as "that effort is no more meaningful, and no less in anticipation of litigation, than the others we reject"; courts should refuse to "honor connections to a preferred forum made in anticipation of litigation and for the likely purpose of making that forum appear convenient"); *In re Zimmer Holdings, Inc.*, 609 F.3d 1378, 1381 (Fed. Cir. 2010) (connections to a forum that "appear[] to be recent, ephemeral, and an artifact of litigation" are not entitled to deference); *Ithaca Ventures k.s. v. Nintendo of Am. Inc.*, No. 13-CV-824, 2014 WL 4829027, at *2 (D. Del. Sept. 25, 2014) ("Ithaca Development's organization under Delaware law mere weeks before filing this lawsuit further undermines its position, suggesting to the court that its organization here was motivated significantly by the instant litigation.").

*Blackbird*, 2017 WL 1536394, at *3 ("[T]he court has recognized that a non-practicing entity with minimal connections to Delaware cannot reap the full benefits of heightened deference.").[4]

### 2. Cloudflare's Forum Preference (Heavily Favors Transfer)

Cloudflare prefers to litigate in the Northern District of California, home to itself and its relevant employees. *See* SOF ¶¶ 1, 4, 10. The Northern District is also home to key evidence and third-party witnesses. *Id.* ¶¶ 9, 16, 18. In contrast, Cloudflare has no offices, employees, or evidence located in Delaware, nor is Delaware home to any relevant witnesses, parties, or evidence. *Id.* ¶¶ 4, 7, 13, 16, 18. This factor weighs significantly in favor of transfer.

### 3. Whether The Claim Arose Elsewhere (Heavily Favors Transfer)

Blackbird's claim arose in the Northern District of California, where Cloudflare designed the accused products. *See* SOF ¶ 3. This factor accordingly weighs heavily in favor of transfer.[5] *See, e.g.*, *Blackbird*, 2017 WL 1536394, at *4 (design of accused products in California weighed in favor of transfer); *MoneyCat Ltd v. PayPal Inc.*, No. 13-CV-1358, 2014 WL 2042699, at *5 (D. Del. May 15, 2014) (where "most of the decisions regarding overall design, marketing, and

---

[4]  *See also Roudabush v. Rondo, Inc.*, No. 14-CV-6523, 2015 WL 12844273, at *2 (E.D. Pa. Feb. 4, 2015) ("[A] plaintiff's choice of forum is given less deference where all of the operative facts occurred in another district and the plaintiff is not a resident of the chosen forum.").

[5]  The fact that a miniscule portion of Cloudflare's customers are based in Delaware, *see* SOF ¶ 6, does not provide Delaware with a substantial interest in this lawsuit, especially where Cloudflare makes the product available nationwide and the Northern District of California has significant connections to the events giving rise to the lawsuit. *See, e.g.*, *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009) ("While the sale of an accused product offered nationwide does not give rise to a substantial interest in any single venue, if there are significant connections between a particular venue and the events that gave rise to a suit, this factor should be weighed in that venue's favor.") (citation omitted); *Tessera*, 2017 WL 1065865, at *11 (same).

development of" the accused services were made in or near San Jose, California, the where-the-claim-arose factor weighed in favor of transfer).

4.    Convenience Of The Parties (Heavily Favors Transfer)

Neither of the parties maintains offices or employees in Delaware. *See* SOF ¶¶ 7, 13. Cloudflare is based in San Francisco, and Blackbird is based in Massachusetts. *Id.* ¶¶ 1, 11. It would be much more convenient and less costly for Cloudflare to litigate in the Northern District of California, as opposed to Delaware. *Id.* ¶ 10; *see also MoneyCat*, 2014 WL 2042699, at *5 ("there is clearly a convenience advantage in allowing PayPal to litigate nearer its headquarters"); *Cruise Control Techs. LLC v. Chrysler Group LLC*, No. 12-CV-1755, 2014 WL 1304820, at *4 (D. Del. Mar. 31, 2014). Blackbird's convenience does not weigh in favor of Delaware.[6] Whether the case proceeds here or in California, Blackbird's employees will travel significant distances from Massachusetts and Blackbird will pay associated travel costs (e.g., flight, hotel, car rentals, meals).[7] This factor thus weighs heavily in favor of transfer.

---

[6]    Most of Blackbird's employees are lawyers (or lawyer support staff), including Blackbird's lead counsel in the instant litigation. *See* SOF ¶ 13; D.I. 13, First Am. Compl. at 8. The convenience of counsel plays no role in the transfer analysis. *See, e.g.*, *Solomon v. Cont'l Am. Life Ins. Co.*, 472 F.2d 1043, 1047 (3d Cir. 1973); *Sherwood Med. Co. v. IVAC Med. Sys., Inc.*, No. 96-CV-305, 1996 WL 700261, at *2 n.1 (D. Del. Nov. 25, 1996).

[7]    *See, e.g.*, *Blackbird*, 2017 WL 1536394, at *5 ("Blackbird, given its location, structure of its company, and lack of substantial connections to Delaware, would suffer little added inconvenience were this case transferred away from its preferred forum. Therefore, the court finds that this factor weighs heavily in favor of TuffStuff."); *Endeavor Meshtech, Inc. v. Itron, Inc.*, No. 13-CV-1343, 2014 WL 11788638, at *2 (D. Del. June 4, 2014) ("[The convenience-of-the-parties factor] weighs strongly in favor of transfer because both parties are located outside Delaware and neither party has alleged that it has any employees residing in Delaware.") (citations omitted); *MoneyCat*, 2014 WL 2042699, at *4 ("whatever marginal additional inconvenience will be inflicted on MoneyCat by having to litigate in California is outweighed by transferring this case to the place where the bulk of the evidence exists"); *Minstar, Inc. v. Laborde*, 626 F. Supp. 142, 146 (D. Del. 1985) ("This Court has repeatedly held that a § 1404(a) motion should be granted when a transfer will greatly aid the movant, yet barely disadvantage the opponent.").

5.      Convenience Of The Witnesses (Heavily Favors Transfer)

The convenience-of-the-witnesses factor also weighs heavily in favor of the Northern District of California. All of Cloudflare's witnesses reside in San Francisco, where the majority of Cloudflare's employees work and where Cloudflare's headquarters are located. None of Cloudflare's witnesses reside in or near Delaware. *See* SOF ¶¶ 4-5; *In re WMS Gaming Inc.*, 564 F. App'x 579, 581 (Fed. Cir. 2014) ("The witnesses . . . all reside in the Northern District of Illinois. Keeping the case in Mississippi would thus require those witnesses to incur significant expenses and loss in productivity."). Nor are any of Blackbird's employees located in Delaware—although one resides in California, as does the patent's prosecution counsel. *See* SOF ¶¶ 13, 15.

Important third-party witnesses also reside in or near San Francisco—in fact, many are within the Northern District of California's 100-mile subpoena power. *See* Fed. R. Civ. P. 45(c)(1). For example, former Cloudflare employees with knowledge of relevant facts live there, as do authors of key pieces of prior art.

| Name | Location | Closer to CA than DE? | Within 100 Miles of San Francisco? | Within 100 Miles of DE? |
|---|---|---|---|---|
| Kevin Altis (Prior Art) | Portland, OR | **Yes** | No | No |
| Paul Angels (Prior Art) | Los Angeles, CA | **Yes** | No | No |
| Douglas Blattner (Prior Art) | Redondo Beach, CA | **Yes** | No | No |
| Gregory Burns (Prior Art) | Carnation, WA | **Yes** | No | No |
| Andras Csaszar (Prior Art) | Los Altos, CA | **Yes** | **Yes** | No |
| Stephen Friedman (Prior Art) | Mountain View, CA | **Yes** | **Yes** | No |
| Wayne Gramlich (Prior Art) | San Francisco, CA | **Yes** | **Yes** | No |
| Dirk Grunwald (Prior Art) | Boulder, CO | **Yes** | No | No |

| | | | | |
|---|---|---|---|---|
| Gates & Cooper (Prosecution Counsel) | Los Angeles, CA | **Yes** | No | No |
| HP Inc. (Prior Art) | Palo Alto, CA | **Yes** | **Yes** | No |
| IBM Almaden Research Center (Prior Art) | San Jose, CA | **Yes** | **Yes** | No |
| Paul Leach (Prior Art) | Seattle, WA | **Yes** | No | No |
| Ron Lee (Prior Art) | Provo, UT | **Yes** | No | No |
| Darrell Long (Prior Art) | Santa Cruz, CA | **Yes** | **Yes** | No |
| Microsoft Corp. (Prior Art) | Redmond, WA | **Yes** | No | No |
| Jeffrey Mogul (Prior Art) | San Francisco, CA | **Yes** | **Yes** | No |
| Novell (Prior Art) | Provo, UT | **Yes** | No | No |
| Oliver Kaufmann (Inventor) | Germany | Overseas | No | No |
| Thomas Kroeger (Prior Art) | Santa Cruz, CA | **Yes** | **Yes** | No |
| Gabor Ligeti (Prior Art) | Budapest, Hungry | Overseas | No | No |
| Ari Loutonen (Prior Art) | San Francisco, CA | **Yes** | **Yes** | No |
| Carlos Maltzahn (Prior Art) | Santa Cruz, CA | **Yes** | **Yes** | No |
| Matthew Parzych (Prior Art) | San Francisco, CA | **Yes** | **Yes** | No |
| Kathy Richardson (Prior Art) | Palo Alto, CA | **Yes** | **Yes** | No |
| Rajeev Sharma (Former Cloud-flare employee) | Oakland, CA | **Yes** | **Yes** | No |
| Oracle (Sun Microsystems) | Santa Clara, CA | **Yes** | **Yes** | No |
| Mattieu Tourne (Former Cloud-flare employee) | San Francisco, CA | **Yes** | **Yes** | No |
| Arthur van Hoff (Prior Art) | Mountain View, CA | **Yes** | **Yes** | No |

SOF, ¶¶ 5, 15, 16, 18.

A trial in Delaware would inconvenience these witnesses (in the unlikely event that they agreed to travel to Delaware to testify). Trial in California, on the other hand, would be much more convenient for them. And many of these witnesses (i.e., 16 identified witnesses) reside within 100 miles of San Francisco, within that court's subpoena power, *see* Fed. R. Civ. P. 45(c)(1)(A)-(2)(A), such that they can be compelled, if necessary, to testify at trial in San Francisco.[8] This Court, in contrast, does not have subpoena power over any known witness.

Trial in either Delaware or California will inconvenience Blackbird's employees—they will travel significant distances regardless of where trial occurs. *See, e.g.*, *Endeavor*, 2014 WL 11788638, at *2; *In re Genentech, Inc.*, 566 F.3d 1338, 1344 (Fed. Cir. 2009).[9] As for the inventor and any other foreign witness, traveling from overseas to either Delaware or California constitutes a "significant undertaking" such that there is no significant difference in convenience between the two venues. *See, e.g.*, *In re Genentech*, 566 F.3d at 1344 (European witnesses must "travel a significant distance no matter where they testify"); *Tessera*, 2017 WL 1065865, at *9 (for Japanese witnesses, "any travel . . . to the United States is going to amount to a significant undertaking").

---

[8]    *See Linex Techs., Inc. v. Hewlett-Packard Co.*, No. 11-CV-400, 2013 WL 105323, at *5 (D. Del. Jan. 7, 2013) ("Though it is true that none of the third-party component suppliers have explicitly stated that their employees will refuse to appear for trial in Delaware, the court does not require such a clear statement. It is enough that likely witnesses reside beyond the court's subpoena power and that there is reason to believe those witnesses will refuse to testify absent a subpoena."); *Tessera*, 2017 WL 1065865, at *9 (witnesses within subpoena power of Northern District of California weighed in favor of transfer where no witnesses were within the subpoena power of District of Delaware).

[9]    And, in any event, because Blackbird's employees are Blackbird's lawyers (or lawyer support staff), their convenience should not play a role in the transfer inquiry. *See, e.g.*, *Solomon*, 472 F.2d at 1047; *Sherwood*, 1996 WL 700261, at *2 n.1.

For these reasons, the Court should weigh this factor heavily in favor of transfer. *See, e.g.*, *Cruise Control*, 2014 WL 1304820, at *4 ("[T]he unavailability of witnesses in this jurisdiction combined with inconvenience to third party witnesses is sufficient to establish that the witnesses' convenience favors transfer.") (citations omitted).

### 6. Location Of Books And Records (Favors Transfer)

In patent-infringement cases, "the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Genentech*, 566 F.3d at 1345 (citations and quotations omitted); *ChriMar Sys., Inc. v. Cisco Sys., Inc.*, No. 11-CV-1050, 2013 WL 828220, at *6 (D. Del. Mar. 6, 2013) (same). "That is very likely to be true in this case as well, given that [the plaintiff] does not have a product or service of its own." *MoneyCat*, 2014 WL 2042699, at *5. "While technological advances relating to the electronic storage and transfer of documents may reduce the value of this factor, the court nevertheless must give it some weight in the *Jumara* analysis." *ChriMar*, 2013 WL 828220, at *6; *see also In re Link_A_Media*, 662 F.3d at 1224.

Cloudflare maintains evidence (e.g., financial, technical, sales, and marketing documents) at its San Francisco headquarters, *see* SOF ¶ 9, and is not aware of any evidence (from any party or third party) located in Delaware. This factor therefore weighs in favor of transfer.[10]

---

[10]    *See, e.g.*, *Kirschner Bros. Oil, Inc. v. Pannill*, 697 F. Supp. 804, 807 (D. Del. 1988); *Blackbird*, 2017 WL 1536394, at *5; *see also In re Nintendo Co.*, 589 F.3d 1194, 1200 (Fed. Cir. 2009) ("the district court erred in not weighing [the access-to-evidence] factor heavily in favor of transfer" where the majority of the defendant's relevant documents were located in Washington (the transferee venue) and no evidence was located in Texas (the transferor venue)); *Endeavor*, 2014 WL 11788638, at *2 (where "the bulk of the records and witnesses will be Itron's and these are not located in Delaware either" the court "must conclude that, as Itron argues and Endeavor does not dispute, it would be far easier for this case to be tried in Itron's headquarters of Washington than in Delaware.").

### D. The Public-Interest Factors Weigh Heavily In Favor Of Transfer

Like the private-interest factors, the public-interest factors support transfer.

#### 1. Enforceability Of The Judgment (Neutral)

This factor is neutral. Delaware and California judgments are equally enforceable.

#### 2. Practical Considerations That Could Make Trial Easy, Expeditious, Or Inexpensive (Heavily Favors Transfer)

Numerous practical considerations favor transfer. As previously noted, Cloudflare is based in San Francisco, and all of its identified employee witnesses reside there as well. Litigating the case in San Francisco would therefore save Cloudflare substantial amounts in costs and employee productivity. *See, e.g.*, *Linex*, 2013 WL 105323, at *6 (litigating at home is a "practical consideration" that supports transfer). Further, Cloudflare's employees would find it much easier and expeditious to attend a trial in San Francisco (where they could continue to work and spend time with their families during trial) as opposed to Delaware. *See, e.g.*, *In re TS Tech USA Corp.*, 551 F.3d 1315, 1320 (Fed. Cir. 2008) (additional travel time for witnesses supports transfer); *In re Acer Am. Corp.*, 626 F.3d 1252, 1255 (Fed. Cir. 2010) (witnesses' time away from "work, family, and community" supports transfer); *MoneyCat*, 2014 WL 2042699, at *6 ("It follows that a trial nearer to PayPal's headquarters is likely to present fewer complications than one across the country. Witnesses who live within a short distance of the courthouse are likely to be more flexible as to when they are able to attend trial and testify, making the management of the proofs simpler."). Finally, accessing Cloudflare's books and records would be easier from San Francisco. *Linex*, 2013 WL 105323, at *6 (location of relevant books and records was a "practical consideration" supporting transfer). This factor weighs heavily in favor of transfer.

3.   Administrative Difficulty Resulting From Court Congestion (Heavily Favors Transfer)

"Delaware is one of the busiest patent jurisdictions in the nation . . . . [which] weigh[s] in favor of transfer." *Cruise Control*, 2014 WL 1304820, at *5. In the same vein, this case is likely to reach trial or resolution quicker in the Northern District of California, especially considering this District's vacant judgeships and the Supreme Court's recent decision in *TC Heartland*, which is expected to lead to a flood of new Delaware patent cases, *see* Ex. 54 (article titled "Delaware Primed for IP Case Bump Despite Bench Vacancies").

The Northern District of California's median time from filing to disposition in civil cases is 7.3 months; its median time from filing to trial in civil cases is 31.2 months; only 6.5% of its civil cases are over three years old; and it has 0.0 "Vacant Judgeship Months."[11] Ex. 55. The District of Delaware's median time from filing to disposition in civil cases is 9.2 months; its median time from filing to trial in civil cases is 24.5 months; 14.1% of its civil cases are over three years old; and, presently, two of its four judgeships are vacant. *Id.* Indeed, because of such vacancies, four Pennsylvania federal judges have agreed to handle Delaware cases, including this case. Ex. 56. In contrast, the Northern District of California has its fourteen judgeships occupied, and seven senior judges also support its bench. Ex. 58; Ex. 59.

Blackbird sued one other defendant (Fastly) in Delaware on the '335 patent. *See Blackbird Tech LLC v. Fastly, Inc.*, No. 17-CV-284 (D. Del.). Fastly, like Cloudflare, is San Francisco based, and Fastly also seeks transfer to the Northern District of California. Accordingly, the *Fastly* lawsuit does not weigh in favor of keeping this case in Delaware—instead, it weighs in

---

[11]   A "Vacant Judgeship Month" is the total number of months that vacancies occurred in any judgeship position in a district. Ex. 57.

18

favor of transfer. *See Cruise Control*, 2014 WL 1304820, at *5 (other defendant seeking transfer weighed in favor of transfer); *see also In re Google*, 2017 WL 977038, at *3.

Given the foregoing, this factor weighs heavily in favor of transfer. *Blackbird*, 2017 WL 1536394, at *5.

4. <u>Local Interest In Deciding Local Controversies At Home (Heavily Favors Transfer)</u>

The Northern District of California maintains a strong interest in deciding the instant case. The Northern District is where Cloudflare maintains its principal place of business and where most of its employees live and work. Indeed, this lawsuit calls into question Cloudflare's reputation as well as the reputation of Cloudflare's California-based employees, providing the Northern District with a significant interest in the case. *See, e.g.*, *In re Hoffmann-La Roche*, 587 F.3d at 1336 ("[T]he [transferee venue's] local interest in this case remains strong because the cause of action calls into question the work and reputation of several individuals residing in or near that district and who presumably conduct business in that community."). This factor thus weighs heavily in favor of transfer.[12]

5. <u>Public Policies Of The Fora (Neutral)</u>

This factor is neutral—no public policy impacts the transfer analysis in this case.

6. <u>Familiarity With Applicable State Law In Diversity Cases (Inapplicable)</u>

This is not a diversity case, so this factor is inapplicable. All federal courts are equally able to apply federal patent law. *See, e.g.*, *In re Link_A_Media*, 662 F.3d at 1224.

---

[12] Cloudflare's Delaware incorporation does not change the analysis. *See, e.g.*, *Cruise Control*, 2014 WL 1304820, at *4 ("[E]ven regarding those Defendants who are incorporated in Delaware, the Eastern District of Michigan still has a stronger interest to this litigation because it is where the claims arose and where the employees and known material witnesses are located."); *Kirschner*, 697 F. Supp. at 807.

* * * * *

In summary, eight factors favor transfer, and none weigh against transfer. As such, the Court should transfer the case.

### E.      The Parties' Delaware Incorporation Is Irrelevant

The parties' Delaware incorporation does not affect the transfer analysis. *See In re Link_A_Media*, 662 F.3d at 1223-24 ("Neither § 1404 nor *Jumara* list a party's state of incorporation as a factor for a venue inquiry."). This comports with the purposes of § 1404(a)—a party's state of incorporation does not affect whether trial is more convenient in that forum. As stated in *Jumara*, convenience largely turns on the location of party witnesses, third-party witnesses, documents and evidence, and court congestion. Delaware incorporation makes it no easier for a party to transport its witnesses there for trial. Where the *Jumara* factors strongly favor the transferee district, the parties' Delaware incorporation does not affect that balance. *See In re Link_A_Media*, 662 F.3d at 1223 (it would be "fundamental error" to make "the fact of [defendant's] incorporation in Delaware effectively dispositive of the transfer inquiry").

## V.      CONCLUSION

For these reasons, the Court should transfer the case to the Northern District of California.

OF COUNSEL:

Steven Callahan
Anthony M. Garza
Grayson Cassada
CHARHON CALLAHAN ROBSON
  & GARZA, PLLC
3333 Lee Parkway, Suite 460
Dallas, TX 75219
(469) 587-7242

Dated: June 20, 2017

*/s/ Jeffrey T. Castellano*
Jeffrey T. Castellano (No. 4837)
Andrew E. Russell (No. 5382)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jcastellano@shawkeller.com
arussell@shawkeller.com
*Attorneys for Defendant Cloudflare, Inc.*