# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BLACKBIRD TECH LLC d/b/a<br>BLACKBIRD TECHNOLOGIES,<br><br>      Plaintiff,<br><br>v.<br><br>CLOUDFLARE, INC.,<br><br>      Defendant. | 17-283-MSG<br><br>**PUBLIC REDACTED VERSION** |
| BLACKBIRD TECH LLC d/b/a<br>BLACKBIRD TECHNOLOGIES,<br><br>      Plaintiff,<br><br>v.<br><br>FASTLY, INC.,<br><br>      Defendant. | 17-284-MSG<br><br>**PUBLIC REDACTED VERSION** |

## PLAINTIFF'S OPPOSITION TO
## DEFENDANTS' MOTION TO TRANSFER VENUE

OF COUNSEL:

Wendy Verlander
wverlander@blackbird-tech.com
Christopher Freeman
cfreeman@blackbird-tech.com
David Gerasimow
dgerasimow@blackbird-tech.com
Blackbird Technologies
One Boston Place, Suite 2600
Boston, MA 02108
(617) 307-7100

STAMOULIS & WEINBLATT LLC

Stamatios Stamoulis #4606
stamoulis@swdelaw.com
Richard C. Weinblatt #5080
weinblatt@swdelaw.com
Two Fox Point Centre
6 Denny Road, Suite 307
Wilmington, DE 19809
Telephone: (302) 999-1540

*Attorneys for Plaintiff*
*Blackbird Tech LLC d/b/a*
*Blackbird Technologies*

Date: August 3, 2017

## TABLE OF CONTENTS

TABLE OF CONTENTS .................................................................................................. ii

TABLE OF AUTHORITIES .......................................................................................... iii

STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS ......................... 1

SUMMARY OF ARGUMENT ....................................................................................... 1

STATEMENT OF FACTS ............................................................................................. 2

    I.   The Connection Between Delaware and this Litigation ..................................... 2

    II.  Cloudflare's Dual Strategy of Increasing Costs and Litigating Outside
        of California .................................................................................................... 3

    III. Defendants' Cherry-Picked "Prior Art Witnesses" ........................................... 5

ARGUMENT ............................................................................................................... 7

    I.   These Actions Could Not Have Been Brought in the Northern District
        of California. ................................................................................................... 7

    II.  Transfer Does Not Serve the Interests of Convenience or Justice. ................... 10

        A.  In Light of Defendants' Explicit Cost-Increasing and Extra-Judicial
            Approach to Litigating this Dispute, Transfer Is Not in the Interests
            of Justice. ................................................................................................ 10

        B.  The *Jumara* Factors Weigh Against Transfer. ........................................... 12

            1.  The Private Interest Factors Weigh Against Transfer. ........................... 12

                i.   Plaintiff's Forum Preference (Heavily Weighs Against
                      Transfer) .......................................................................................... 12

                ii.  Defendant's Forum Preference (Neutral) ........................................... 15

                iii. Whether the Claim Arose Elsewhere (Neutral) ................................. 15

                iv. Convenience of the Parties (Weighs Against Transfer) ....................... 16

                v.   Convenience of the Witnesses (Weighs Against Transfer) ................... 17

                 vi. Location of Books and Records (Neutral) ........................................... 18

            2.  The Public Interest Factors Weigh Against Transfer. ........................... 19

                 i.   Practical Considerations (Neutral) ..................................................... 19

                ii.  Administrative Difficulties (Weighs Against Transfer) ....................... 19

                iii. Local Interests (Weighs Against Transfer) ........................................ 20

                iv. Enforceability of the Judgement (Neutral), Public Policies of
                      the Fora (Neutral), and Familiarity with State Law (Inapplicable) ...... 20

CONCLUSION ............................................................................................................ 20

# TABLE OF AUTHORITIES

**Cases**

*Blackbird Tech LLC v. Serv. Lighting & Elec. Supplies, Inc.*,
 2016 WL 2904592 (D. Del. May 18, 2016).......................................................5

*Blackbird Tech LLC v. TuffStuff Fitness Int'l, Inc.*,
 2017 WL 1536394 (D. Del. Apr. 27, 2017)...................................................8, 13

*Callabo Innovations, Inc. v. Omnivision Techs., Inc.*,
 2017 WL 374484 (D. Del. Jan. 25, 2017)...................................................12, 15

*C.R. Bard, Inc. v. Angiodynamics, Inc.*,
 2016 WL 153033 (D. Del. Jan. 12, 2016)................................................... 15-16

*Flava Works, Inc. v. Cloudflare, Inc.*,
 1:17-cv-02746 (N.D. Ill.) .................................................................................12

*Fourco Glass Co. v. Transmirra Prods. Corp.*,
 353 U.S. 222 (1957) .................................................................................. 14-15

*Helicos Biosci. Corp. v. Illumina, Inc.*,
 858 F. Supp. 2d 367 (D. Del. 2012).................................................. 14-15, 17

*Hoffman v. Blaski*,
 363 U.S. 335 (1960)...........................................................................................7

*Intellectual Ventures I LLC v. Altera Corp.*,
 842. Supp. 2d 744 (D. Del. 2012)...............................................................13, 19

*Ithaca Ventures k.s. v. Nintendo of Am. Inc.*,
 2014 WL 4829027 (D. Del. Sept. 24, 2014)...................................................13

*In re Link_A_Media Devices Corp.*,
 662 F.3d 1221 (Fed. Cir. 2011)..................................................................13, 15

*In re Microsoft Corp.*,
 630 F.3d 1361 (Fed. Cir. 2011).......................................................................13

*In re Zimmer Hldgs., Inc.*,
 609 F.3d 1378 (Fed. Cir. 2010).......................................................................13

*Innogentics, N.V. v. Abbott Labs.*,
 512 F.3d 1363 (Fed. Cir. 2008).......................................................................18

*IRIS Corp. v. Japan Airlines Corp.*,
 768 F.3d 1359 (Fed. Cir. 2014)..........................................................................8

*Jumara v. State Farm Ins. Co.*,
 55 F.3d 873 (3d Cir. 1995) ........................................................................ *passim*

*Marvell Int'l Ltd. v. Link_A_Media Devices Corp.*,
 2011 WL 2293999 (D. Del. June 8, 2011).......................................................15

*Napoli v. Cloudflare, Inc.*,
 1:15-cv-11446 (N.D. Ill.) .................................................................................12

*NTP, Inc. v. Research in Motion, Ltd.*,
   418 F.3d 1282 (Fed. Cir. 2005)..................................................................8-9

*PersonalWeb Techs. LLC v. NEC Corp. of Am., Inc.*,
   2013 WL 9600333 (E.D. Tex. Mar. 21, 2013) ............................................18

*Realtime Data, LLC v. Rackspace US, Inc.*,
   2017 WL 772653 (E.D. Tex. Feb. 28, 2017) ..............................................18

*Schumer v. Lab. Computer Sys., Inc.*,
   308 F.3d 1304 (Fed. Cir. 2002)..................................................................15

*Sci. Telecomm'n, LLC v. Adtran, Inc.*,
   2016 WL 1650760 (D. Del. Apr. 25, 2016)................................................16

*Shutte v. Armco Steel Corp.*,
   431 F.2d 22 (3d Cir. 1970).........................................................................12

*TC Heartland LLC v. Kraft Foods Group Brands LLC*,
   137 S.Ct. 1514 (2017) ............................................................. 8, 14-15, 19

*VE Holdings Corp. v. Johnson Gas Appliance Co.*,
   917 F.2d 1574 (Fed. Cir. 1990).............................................................14-15

## Statutes & Rules

28 U.S.C. § 1400(b) .......................................................................................9, 14

28 U.S.C. § 1404(a) .........................................................................................1, 7

Fed. R. Civ. P. 45(c)(1)(A) ................................................................................18

Ill. Rule of Prof. Conduct 8.4(g) ........................................................................5

Mass. Rule of Prof. Conduct 3.4(h) ...................................................................5

## Secondary Sources

5 Wright & Miller, Fᴇᴅ. Pʀᴀᴄ. & Pʀᴏᴄ. (3d ed. 2004) ....................................3

**STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS**

Plaintiff Blackbird Tech LLC d/b/a Blackbird Technologies ("Blackbird") sued Defendants Cloudflare, Inc. ("Cloudflare") and Fastly, Inc. ("Fastly") for infringing U.S. Patent No. 6,453,335 ("the '335 Patent"), entitled "Providing an Internet Third Party Data Channel," for operating content delivery networks with certain features. Cloudflare moves to transfer the action against it under 28 U.S.C. § 1404(a) to the Northern District of California on convenience grounds. (17-283-MSG, D.I. 20). Fastly joins that motion. (17-284-MSG, D.I. 16). Blackbird opposes.

**SUMMARY OF ARGUMENT**

1.  Defendants' transfer request stems directly from their explicit attempts to distract Blackbird and to increase its costs in pursuing this matter, not from any genuine desire to make things more convenient for themselves. Defendants have already sought to litigate this dispute through extra-judicial avenues outside the Northern District of California, to which they now seek transfer. Defendants' actions belie any notion that convenience or justice favors transfer.

2.  Defendants also do not show that venue would have been proper in the Northern District of California, as section 1404(a) requires, as they fail to show that their acts of infringement occur entirely within that district.

3.  To the extent that the transfer factors from *Jumara v. State Farm Ins. Co.*, 55 F.3d 873 (3d Cir. 1995), have any bearing here, they do not favor transfer. All parties are Delaware companies of long standing, and as such, Blackbird's choice of venue is given heightened weight. Defendants cannot show, as they must, that important witnesses are available in California but not in Delaware. Instead, Defendants deliberately distort the prior art evidence they have gathered to date, to create the appearance of a nexus to California, when none exists. Delaware also has a strong interest in resolving this matter, as Defendants have directly attacked Blackbird's reputation and business model through public blog posts ███████████████████.

**STATEMENT OF FACTS**

**I.     The Connection Between Delaware and this Litigation**

All parties to this litigation are organized and exist under the laws of the State of Delaware. Cloudflare, Inc. was incorporated in Delaware in July, 2009 (*see* 17-283-MSG, D.I. 15 ¶ 6), and later incorporated several subsidiaries in Delaware in September and October, 2012 (Ex. A).[1] Fastly, Inc. was incorporated in Delaware in March, 2011.   (*See* 17-284-MSG, D.I. 12 ¶ 6). Blackbird Tech LLC was organized in Delaware in July, 2014.  (Ex. B).

In March, 2017, nearly three years after it was founded, Blackbird sued Cloudflare and Fastly for infringing the '335 Patent.  (17-283-MSG, D.I. 1 & 17-284-MSG, D.I. 1).  Cloudflare and Fastly each operate content delivery networks ("CDNs").  According to Cloudflare, CDNs accelerate the delivery of content from websites to users by saving or "caching" at least some of that content within a network of "edge servers" geographically distributed around the world.  (Ex. C at 2; *see also* 17-283-MSG, D.I. 15 ¶ 15 & 17-284-MSG, D.I. 12 ¶ 15).   Instead of communicating directly with the requested website, some user requests are initially directed to these edge servers, which provide the user with a cached version of the content.  (Ex. C at 2).  By being located geographically closer to the user, edge servers can provide the requested content to the user faster, among other benefits, which both users and website operators tend to prefer.  (*Id.*).

CDNs, therefore, have a global presence with no geographical locus, as both websites and users are located around the world.  Cloudflare operates some 20+ edge servers throughout the country, including locations in Philadelphia, PA, and Newark, NJ.  (Ex. D at 2).  Likewise, Fastly operates over a dozen edge servers throughout the US, including Newark, NJ, and New York.  (Ex. E at 2).  Building and maintaining such networks requires significant investment.  For example,

---

[1] All exhibits are attached to the co-filed Supporting Declaration of David Gerasimow.

each of Cloudflare and Fastly have received approximately $180 million in funding. (Ex. F at 1; Ex. G at 1). Cloudflare alone has been valued at $3.2 billion. (Ex. H at 1).

Defendants each admit they have Delaware customers, *e.g.*, website operators located in Delaware who rely on Defendants' CDNs to deliver web content. (Cloudflare Br. at 3; Fastly Decl. ¶ 6). Defendants also each admit that they deliver content to users located in Delaware, *e.g.*, individuals browsing those websites. (17-283, D.I. 15 ¶ 7 & 17-284, D.I. 12 ¶ 7). And, for example, although Cloudflare alleges that about 50 times as many of its customers reside in California than in Delaware (Cloudflare Br. at 3), that multiple is approximately proportional to the population difference between the two states (39.25 million to 950,000 citizens, Exs. I & J).

## II.   Cloudflare's Dual Strategy of Increasing Costs and Litigating Outside of California

Defendants, in particular Cloudflare but whose motion Fastly joins without reservation, have expressly adopted a strategy of increasing, not decreasing, litigation cost and complexity.

Defendants responded to Blackbird's original complaints by asking this Court to dismiss a request in Blackbird's prayer for enhanced damages under 35 U.S.C § 285. (17-283-MSG, D.I. 9 & 17-284-MSG, D.I. 8). Section 285 allows courts to award attorney fees to prevailing parties in patent cases. However, the sufficiency of pleadings is judged with respect to claims, not remedies. 5 Wright & Miller, Fed. Prac. & Proc. § 1255 at 508-09 (3d ed. 2004). Thus, Blackbird submitted amended complaints simply removing two words in its prayer – "enhanced damages" – while still requesting attorney fees under section 285, to moot Defendants' motions and to begin litigation on the merits. (*See* 17-283-MSG, D.I. 13 at 7 ¶ D & 17-284-MSG, D.I. 10 at 7 ¶ D).

On the same day that Defendants filed their now-mooted motions to dismiss, Cloudflare publicly announced its plan to increase Blackbird's litigation costs, by conducting this case in multiple administrative venues outside of California as well as through extra-judicial avenues having nothing to do with California. In a lengthy and sweeping post on the company's blog

entitled "Standing Up to a Dangerous New Breed of Patent Troll," Cloudflare's CEO, Matthew Prince, outlined his company's strategy for responding to this litigation.[2]  (Ex. K).  Central to Cloudflare's strategy is increasing Blackbird's costs.  To that end, Prince enumerated "a four-pronged approach to challenge Blackbird's actions in this case."  (*Id.* at 6).  Each "prong" is specifically calculated to increase Blackbird's litigation costs:

- The first step, according to Cloudflare, includes plans for filing of a petition with the U.S. Patent & Trademark Office ("USPTO") in Washington, D.C., for *inter partes* review ("IPR") of the '335 Patent.  (*Id.*).

- The second step is Cloudflare's funding of "a crowdsourced effort to find evidence to invalidate Blackbird's patents."  (*Id.*).  Through this effort, dubbed "Project Jengo," Cloudflare is soliciting prior art submissions from the general public through a form available on its website.  (Ex. L at 3).  To encourage these submissions, Cloudflare placed a $50,000 "bounty" on all of Blackbird's patents, not just the '335 Patent asserted here.  (*Id.* at 2-3).  Cloudflare stated that it intends to file petitions for *ex parte* reexamination in the USPTO of Blackbird patents not asserted in this litigation, to increase Blackbird's costs.  (Ex. M at 4).  Indeed, Cloudflare's general counsel, Douglas Kramer, in a separate post on the company's blog, explained that the "advantage" of *ex parte* reexamination is that it "forc[es] patent owners [like Blackbird] back to the USPTO" "[w]ith a relatively low up-front investment and no continuing costs incurred by the petitioner [*i.e.*, Cloudflare]."  (*Id.*).  In short, Cloudflare has announced plans to initiate numerous *ex parte* reexaminations against Blackbird but bear absolutely no further cost in pursuing them to conclusion.

- Cloudflare's third step is probing irrelevant matters, and to use private investigators to investigate not only Blackbird, but its attorneys: "Step 3 … investigate Blackbird's operations … us[ing] the discovery process in this case and to retain a group of private investigators to look into Blackbird's operations and attorneys."  (Ex. K at 7-8).

- 

[2] Cloudflare also sought news coverage of its response, coordinating the simultaneous release of articles on *fortune.com* and in the online technology magazine, *arstechnica.com*.  (Exs. N & O).

██████████████████████████████ Cloudflare has since worked with Massachusetts and Illinois state legislators to introduce bills directed at Blackbird's business model. (Ex. R at 2).

\* \* \*

In a recent interview about this case, Prince doubled down on this cost-increasing strategy, and expressly stated that the company's approach is predicated on forcing Blackbird to spend time and money defending itself outside of the federal courts, and specifically outside of Delaware:

> Prince sees Cloudflare's primary mission as figuring out how to increase Blackbird's costs. Explains Prince, "We thought, if it's asymmetric," because it's so much cheaper for Blackbird to sue than for a company to defend itself, "how can we make it more symmetric? And every minute that they spend having to defend themselves somewhere else is a minute they aren't suing us or someone else."

(Ex. S at 4). Indeed, Prince stated that Cloudflare brought the instant transfer motion to increase Blackbird's costs and to create other logistical issues for Blackbird:

> Cloudflare is further fighting to have the case moved from Delaware — where Cloudflare is incorporated — to California…. (That it would also increase Blackbird's costs, as they aren't licensed or [sic: to] practice in California, is no accident, though Prince acknowledges the manuever [sic] is "not a slam dunk").

(*Id.*). As shown, Defendants' motivation in seeking transfer has nothing to do with their own convenience and everything to do with increasing Blackbird's costs.

## III.  Defendants' Cherry-Picked "Prior Art Witnesses"

Against this backdrop, Defendants purport to identify 10 groups of potential prior art witnesses for the Court's consideration on transfer. (Cloudflare Br. 6-8). According to Defendants, all of them either reside in the Northern District of California or closer to California

---

████████████████████████████████████████████████████
████████████████████████████████████████████████████

[4] Judge Andrews recently reviewed Blackbird's business model in a protective order dispute and allowed access by Blackbird's counsel to defendants' confidential information. *Blackbird Tech LLC v. Serv. Lighting & Elec. Supplies, Inc.*, 2016 WL 2904592 (D. Del. May 18, 2016).

than Delaware.  (*Id.* at 13-14).  By Defendants' count (which double counts both authors/inventors and the companies/organizations they work for), there are 24 prior art witnesses.  (*Id.*).  According to Defendants, all but one are closer to California than Delaware (*id.*), and at least 8 of the 10 witness groups, or 80%, have some direct connection to California.  (*Id.* at 6-8).

That Defendants' proffered prior art witnesses cluster around California is no accident. After Defendants filed the instant transfer motion, Blackbird requested copies of all prior art submissions through "Project Jengo" (Ex. U), which Defendants provided (Ex. V).[5]  Cloudflare says it has received, as of July 24, 2017, some 96 submissions related to the '335 Patent.  (*Id.*).  At least 9 out of the 10 groups of prior art witnesses identified in Defendants' brief were identified through this project.  (Ex. W).  Yet Defendants inexplicably exclude **all** submissions of alleged prior art with inventors or authors **not** closer to California than Delaware.  In fact, examining the submissions not identified to the Court by Defendants, and excluding wholly irrelevant submissions,[6] some 84 of 117 inventors/authors, or **over 70%, have no apparent connection to the Northern District of California** whatsoever.  (*Id.*).  (Double counting these inventors' and authors' institutions, like Defendants do, would only increase the percentage with no connection.) Indeed, that is nearly the exact opposite result of the one presented to the Court by Defendants. Defendants likewise exclude every one of the ten submissions with completely non-US inventorship/authorship.  (*Id.*).  And to the extent Defendants try to argue that California is simply home to better research and innovation, Defendants exclude submissions reflecting research done

_____

[5] Blackbird provides, as Exhibit V, the same poorly-formatted version of these submissions provided by Defendants.  For the Court's convenience, Blackbird provides a re-formatted version as Exhibit W, also providing additional information about the location of *all* inventors/authors.

[6] For example, duplicate submissions, data dumps, general descriptions of technology without sources, such as Wikipedia articles, requests for more information, advertising pitches for prior art services, etc.  Blackbird was unable to locate only one author, who according to the submission penned a supposedly-relevant article in 1973, some 20 years before HTML was even invented.

at MIT, Dartmouth, Columbia, Princeton, and AT&T Labs.  (*Id.*).

ARGUMENT

Defendants wholly fail to address the burden they bear on seeking transfer out of the District of Delaware.  (*See, e.g.*, Cloudflare Br. at 8-9).  According to the Third Circuit, whose law controls, under section 1404(a), "[t]he burden of establishing the need for transfer still rests with the movant," *i.e.*, Defendants.  *Jumara*, 55 F.3d at 879.  Likewise, "in ruling on defendants' motion the plaintiff's choice of venue should not be lightly disturbed."  *Id.*  (internal quotation omitted). Here, Defendants have not carried their burden of establishing that transfer to the Northern District of California would make litigating this case **any** more convenient (much less **substantially** more convenient, as the law requires), let alone that transfer serves the interests of justice.  As discussed below, Defendants have not established "the need for transfer" described by the Third Circuit in *Jumara* (*id.*), particularly in light of the fact they voluntarily sought the benefits of incorporating in Delaware while simultaneously trying to increase Blackbird's litigation costs, both through the instant transfer motion as well as a variety of extra-judicial efforts having nothing to do with their stated venue preference of the Northern District of California.

## I.   These Actions Could <u>Not</u> Have Been Brought in the Northern District of California.

But first, Defendants cannot show, as they must, that these actions could have been brought in the Northern District of California.  Under section 1404(a), "a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).  This threshold question requires, among other things, that venue would have been proper in the proposed transferee forum.  *Hoffman v. Blaski*, 363 U.S. 335, 343-44 (1960).

Defendants cannot show that venue would have been proper in the Northern District of

California.[7]  In *TC Heartland LLC v. Kraft Foods Group Brands LLC*, 137 S.Ct. 1514 (2017), the Supreme Court reaffirmed that the patent venue statute, 28 U.S.C. § 1400(b), represents the sole venue statute applicable to patent cases.  137 S.Ct. at 1517.  Under section 1400(b), "[a]ny civil action for patent infringement may be brought in the judicial district [i] where the defendant resides, or [ii] where the defendant has committed acts of infringement and has a regular and established place of business."  In *TC Heartland*, the Supreme Court stated that, for the purposes of the first prong of section 1400(b), "a domestic corporation 'resides' only in its State of incorporation."  137 S.Ct. at 1517.  Here, because Cloudflare and Fastly are incorporated in Delaware, venue would have been proper in the Northern District only if the second prong were satisfied, *i.e.*, only if Defendants committed acts of infringement in the Northern District and also had places of business there.  Because Defendants have such places of business, the sole issue is whether they committed acts of infringement there.  In this regard, Defendants come up short.  They fail to show that their infringement occurs entirely within the Northern District of California.

Claims 8 and 24 of the '335 Patent are asserted in Blackbird's amended complaints.  (17-283-MSG, D.I. 13 ¶ 13; 17-284-MSG, D.I. 10 ¶ 13).  Claim 8 is directed to "[a] method for providing an internet third party data channel," while claim 24 covers "[a]n apparatus" for doing the same.  (17-283-MSG, D.I. 13-1, cols. 8 & 10).  According to the Federal Circuit in a related context, "a process cannot be used 'within' the United States … unless each of the steps is performed in this country."  *NTP, Inc. v. Research in Motion, Ltd.*, 418 F.3d 1282, 1318 (Fed. Cir. 2005), *abrogated on other grounds by IRIS Corp. v. Japan Airlines Corp.*, 768 F.3d 1359, 1361 n.1 (Fed. Cir. 2014).  Likewise, "[t]he use of a claimed system … is the place at which the system

---

[7] That venue is not proper in the transferee forum distinguishes *Blackbird Tech LLC v. TuffStuff Fitness Int'l, Inc.*, 2017 WL 1536394 (D. Del. Apr. 27, 2017), where that was not at issue.

as a whole is put into service." *NTP*, 418 F.3d at 1317.

Thus, under section 1400(b), a method claim is infringed within a district only if each of the steps is performed there, and an apparatus claim is infringed within a district only if the whole system is put into service there. *See id.* at 1317-18. Defendants, by contrast, allege only that ***some portion*** of the accused systems is located in the Northern District of California. For example, Fastly alleges merely that "***part*** of the accused system" are "these data centers located in the Northern District of California." (17-284-MSG, D.I. 16, Ex. A ¶ 5 (emphasis added)). Likewise, Cloudflare alleges only that "[t]hese servers are responsible for ***much*** of the accused functionality." (Cloudflare Br. at 2 ¶ 2 (emphasis added)). Indeed, Cloudflare asserts without any explanation that "[it] uses the accused functionality ***from*** its regular and established place of business in San Francisco," not that the accused functionality is located there, or that all claimed steps are performed there. (*Id.* at 2 ¶ 3 (emphasis added)).

Defendants' undocumented allegations concerning the situs of infringement thus fall well short of showing that venue would have been proper in the Northern District of California. Claims 8 and 24 recite, among other things, data channels connecting various network elements. For example, they recite "an existing data channel between an internet server and an internet client" as well as "an internet third party data channel connecting a data source distinct from said internet server." Defendants have not shown that these data channels and network elements are located entirely within the Northern District. It is unlikely that they are given the expansive nature of Defendants' networks. While Cloudflare and Fastly may use the claimed systems and methods entirely by themselves, they have not shown that they do so entirely within the Northern District of California, which is what is required to show that venue would have been proper in that district.

Given these issues surrounding the propriety of venue anywhere but the state of

incorporation, Blackbird sued Defendants in the only district where venue surely lies – the District of Delaware – where both Defendants are incorporated. Doubts about whether venue is proper in the proposed transferee venue should be resolved in favor of where venue is surely proper. Because Defendants failed to show, as they must, that venue would have been proper in the Northern District of California, their transfer motion must be denied.

## II. Transfer Does Not Serve the Interests of Convenience or Justice.

### A. *In Light of Defendants' Explicit Cost-Increasing and Extra-Judicial Approach to Litigating this Dispute, Transfer Is Not in the Interests of Justice.*

Even if Defendants could show that venue would have been proper in the Northern District of California, they cannot also show that district is a substantially more convenient forum, or that transferring these cases there serves the interest of justice. Defendants' publicly-touted efforts to increase Blackbird's costs, while also pursuing administrative and extra-judicial action outside the Northern District of California, belies their assertion that litigating these cases in that district would be substantially more convenient for them. Defendants make no mention of these efforts in their brief, instead presenting an unduly narrow view of the *Jumara* factors.

The transfer inquiry, however, is a flexible one that can and should consider behavior like Defendants'. The Third Circuit instructs courts to consider "all relevant factors" in the transfer analysis. *Jumara*, 55 F.3d at 879. Here, the overriding consideration is not the claims of convenience that the well-funded Defendants make in their motion papers, but the actual motivations they have espoused publicly, as well as the actual actions they have taken, inside and outside of these proceedings. In no uncertain terms, they have described their "primary mission as figuring out how to increase Blackbird's costs." (Ex. S at 4). That mission expressly includes bringing this transfer motion to make this case more financially and logistically challenging for Blackbird. (*Id.*). Indeed, Defendants seek not only to increase Blackbird's costs in litigating this

matter, but also in increasing its costs across the board by challenging dozens of patents having nothing to do with this matter. (Ex. M). In fact, the "bounty" that Cloudflare placed on Blackbird's patents easily dwarfs the travel costs of which it now complains. Defendants' efforts to increase Blackbird's costs alone undercut any claim they have about Delaware being too expensive.

If purposefully increasing costs alone were not enough to deny transfer (which it is), Defendants' efforts to litigate this dispute outside of the Northern District of California further undermines any claim they might have to Delaware being inconvenient. After bringing motions to dismiss before this Court with no practical impact, ███████████████████ █████████████████████████████████████████████████████████ ████████████████████████████████ Cloudflare has also engaged in legislative activity in both jurisdictions, seeking to ban Blackbird's business model by statute, and its CEO likewise expressed interest in pursuing legislation in Delaware, stating that, "We're happy to work with interested lawmakers in other states, including Delaware …." (Ex. R at 2). Further, Cloudflare has threatened administrative action before the USPTO in Washington, D.C., including *ex parte* reexaminations of patents not at issue, and that will never be at issue.

The idea, therefore, that transfer to the Northern District of California is for Defendants' convenience, or in the interests of justice, is plainly wrong. If Defendants were truly interested in reducing their costs and litigating this dispute in California, their course of conduct would look much different. By contrast, Blackbird brought suit in the only place where venue was surely proper: Delaware. Defendants incorporated themselves in Delaware to seek the advantages and protections of Delaware law and the Delaware courts. Defendants' belated claims to convenience ring hollow, as they seek those benefits apparently only when it suits them. When it does not,

Defendants are more than willing and able to litigate disputes anywhere in the country,[8] as they have already done in this case. They are also willing and able to spend substantial sums of money on litigation, not just on defending themselves against the '335 Patent, but on a "bounty" ranging into the tens of thousands of dollars (not to mention associated legal and filing fees) to challenge patents that have never been asserted against anyone, let alone Defendants. Put simply, transferring this case to California would manifestly undermine the interests of justice.

    B.    The Jumara *Factors Weigh Against Transfer.*

### 1. The Private Interest Factors Weigh Against Transfer.

Given Defendants' actions, transfer should be denied "in the interests of justice" without need to consider the *Jumara* factors. However, those factors are now discussed to highlight the many inaccuracies set forth by Defendants. As shown below, those factors weigh against transfer.

    i.    Plaintiff's Forum Preference (Heavily Weighs Against Transfer)

Defendants incorrectly dismiss Blackbird's forum preference as "inapplicable." (Cloudflare Br. at 10). Defendants' contention is contrary to law. In the Third Circuit, "[i]t is black letter law that a plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request, and that choice 'should not be lightly disturbed.'" *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970). "[E]ven where the chosen forum is not a 'home forum,' courts still give a plaintiff's preference 'heightened' weight." *Callabo Innovations, Inc. v. Omnivision Techs., Inc.*, 2017 WL 374484, at *4 (D. Del. Jan. 25, 2017). And when "Delaware … is the state of incorporation of both parties, the court awards this factor 'increased weight in the *Jumara* analysis.'" *Id.* Here, all parties are incorporated in Delaware (a fact that distinguishes

---

[8] For example, Cloudflare has litigated multiple intellectual property lawsuits in the Northern District of Illinois without seeking transfer. *See Flava Works, Inc. v. Cloudflare, Inc.*, 1:17-cv-02746 (N.D. Ill.); *Napoli v. Cloudflare, Inc.*, 1:15-cv-11446 (N.D. Ill.).

*Blackbird v. TuffStuff*), and Blackbird brought suit in Delaware. Hence, this factor is given "heightened" weight, and it weighs heavily against transfer.

Defendants cite an inapposite body of cases in which plaintiffs sought to manufacture venue, which is not the case here, to conclude wrongly that this factor is "inapplicable":

- In *Microsoft*, the plaintiff incorporated in Texas just 16 days before filing suit in the Eastern District of Texas. 630 F.3d 1361, 1365 (Fed. Cir. 2011).

- In *Zimmer*, shortly before suing in the Eastern District of Texas, the plaintiff, a long-standing Michigan corporation, sent its patent files to a newly-opened office in the Eastern District of Texas, shared by its lawyer's other clients, to set up an argument that the relevant files were located in its preferred venue. 609 F.3d 1378, 1381 (Fed. Cir. 2010).[9]

- In *Nintendo*, the plaintiff, like the plaintiff in *Microsoft*, "organiz[ed] in Delaware mere weeks before filing this lawsuit." 2014 WL 4829027, at *2 (D. Del. Sept. 24, 2014).

- And in *Link_A_Media Devices*, the only Federal Circuit case applying Third Circuit law cited by Defendants, the plaintiff was a holding company incorporated in Bermuda, not Delaware, and the plaintiff's parent company's principal place of business was in California, not Delaware. 662 F.3d 1221, 1224 (Fed. Cir. 2011). Unlike the present lawsuits, the only connection to Delaware was that it was the defendant's state of incorporation.[10] *Id.*

None of these cases holds that a plaintiff's forum choice is "inapplicable," as Defendants suggest.

Blackbird was formed in Delaware on July 1, 2014. (Ex. B). Blackbird acquired the '335 Patent asserted in these cases more than two years later, on October 3, 2016. (17-283-MSG, D.I. 25, Ex. 25). Six months later, on March 16, 2017, Blackbird brought suit against Defendants, the only time it has asserted the '335 Patent. (17-283-MSG, D.I. 1). Plainly, Blackbird's formation in Delaware several years ago was not done to manufacture venue, and these cases instead

---

[9] This is essentially the plaintiffs' equivalent of what Defendants tried to do with the alleged prior art witnesses, discussed below.

[10] Courts distinguish *Link_A_Media* from cases in which, as here, the plaintiff is a Delaware company. *See Intellectual Ventures I LLC v. Altera Corp.*, 842. Supp. 2d 744, 753 (D. Del. 2012).

represent the latest lawsuits in a pattern by Blackbird of enforcing its patent rights in Delaware.[11] As such, Blackbird's choice of Delaware should be afforded heightened weight under *Jumara*.

Notably, the cases cited by Defendants were decided long before the Supreme Court's *TC Heartland* decision. Such cases thus reflect the Federal Circuit's now-overruled stance that venue was proper anywhere personal jurisdiction existed, and Defendants make far too much of the fact that the Federal Circuit previously downplayed the state of incorporation in the transfer analysis. By reaffirming that 28 U.S.C. § 1400(b) constitutes the sole patent infringement venue statute, the Supreme Court greatly reduced the number of forums where proper venue would lie in patent cases, and emphasized the state of incorporation as one of few proper venues, if not the only proper venue, in many such cases. *TC Heartland* marks a return to an era when state of incorporation mattered greatly for the purposes of venue.

To illustrate, in ruling on a section 1404 transfer motion, Senior Judge Robinson observed several years ago that, since at least the late 1800s, patent cases could be brought in the district where the defendant was incorporated. *Helicos Biosci. Corp. v. Illumina, Inc.*, 858 F. Supp. 2d 367, 370 (D. Del. 2012) (citing *Fourco Glass Co. v. Transmirra Prods. Corp.*, 353 U.S. 222, 226 (1957)). As Senior Judge Robinson explained, the Federal Circuit greatly expanded venue in 1990 by reinterpreting section 1400(b), the patent venue statute, in light of amendments made to 28 U.S.C. § 1391(c), the general venue statute. *Id.* (citing *VE Holdings Corp. v. Johnson Gas Appliance Co.*, 917 F.2d 1574, 1578 (Fed. Cir. 1990)). Senior Judge Robinson recognized that the "historical continuum" of patent-specific venue law should serve as "the backdrop for the Third Circuit's analysis" in *Jumara*, which was not a patent case, and thus emphasized the parties' state

---

[11] Indeed, since its formation in 2014, Blackbird has brought all of its patent infringement cases in Delaware (save for a recent case brought in the Southern District of California where that district was the only proper venue under *TC Heartland*). Blackbird clearly prefers to litigate in Delaware.

of incorporation in her transfer analyses. *See id.* at 371; *see also, e.g., Marvell Int'l Ltd. v. Link_A_Media Devices Corp.*, 2011 WL 2293999, at *2 (D. Del. June 8, 2011), *reversed by Link_A_Media*, 662 F.3d 1221. The Supreme Court has now endorsed an approach to venue emphasizing the state of incorporation as a critical factor, like Senior Judge Robinson's. *See TC Heartland*, 137 S.Ct. at 1520 (reaffirming *Fourco* and rejecting *VE Holdings*). Thus, the Federal Circuit's discounting of the state of incorporation, as an outgrowth of its now-overturned view of venue, is clearly wrong.

### ii. Defendant's Forum Preference (Neutral)

"Courts decline to elevate [defendants'] convenience over the choice of a neutral forum selected by [the defendants] as the situs of [their] incorporation." *Callabo*, 2017 WL 374484, at *5 (internal quotation omitted) (refusing to transfer case to the Northern District of California where all parties were incorporated in Delaware). Defendants argue this factor only briefly and rely on the alleged convenience for them in litigating this dispute in the Northern District of California. (Cloudflare Br. at 11). The convenience factor is addressed below.

### iii. Whether the Claim Arose Elsewhere (Neutral)

Defendants wrongly assert that Blackbird's claims arose in the Northern District of California. (Cloudflare Br. at 11). The crux of Defendants' argument is that they designed the accused products there. (*Id.* at 11-12). Yet designing an accused product is not an act of patent infringement. Rather, a claim for patent infringement arises wherever someone "makes, uses, offers to sell, or sells any patented invention" without authority. 35 U.S.C. § 271(a). This is particularly true in a case like this one, where a method claim is asserted, as the notion of "making" a method does not exist. *Schumer v. Lab. Computer Sys., Inc.*, 308 F.3d 1304, 1309 n.3 (Fed. Cir. 2002) ("A method claim is infringed only by one practicing the patented method."). To the extent Defendant's infringement of the '335 Patent occurs in any single district, the claims here arose in

Delaware just as much as they arose in California. This factor is therefore neutral. *C.R. Bard, Inc. v. Angiodynamics, Inc.*, 2016 WL 153033, at *3 (D. Del. Jan. 12, 2016).

iv.    Convenience of the Parties (Weighs Against Transfer)

Defendants blithely assert that "[i]t would be much more convenient and less costly for [them] to litigate in the Northern District of California, as opposed to Delaware." (Cloudflare Br. at 12). As discussed above in Part II of the Facts, Defendants' convenience has very little to do with their seeking transfer. To the contrary, it has everything to do with increasing Blackbird's costs and making these cases more challenging for Blackbird to pursue. Indeed, if litigating outside of California were so inconvenient, Defendants would not have engaged in extra-judicial activities in Illinois and Massachusetts, and threatened them in Delaware and Washington, D.C.

Even if Defendants' activities outside of California were not enough to deny transfer, which they are, when a party "accept[s] the benefits of incorporation under the laws of the State of Delaware, 'a company should not be successful in arguing that litigation' in Delaware is 'inconvenient,' 'absent some showing of a unique or unexpected burden.'" *Sci. Telecommc'n, LLC v. Adtran, Inc.*, 2016 WL 1650760, at *1 (D. Del. Apr. 25, 2016). That is precisely what Defendants do here. Delaware is convenient for them only when it suits them. They have made no showing of "a unique or unexpected burden" of litigating here. Rather, Defendants' arguments about convenience are unremarkable complaints about litigating away from their headquarters.

In evaluating the convenience of the parties, the Third Circuit focuses on the parties' "relative physical and financial condition." *Jumara*, 55 F.3d at 879. Here, each of the Defendants have received funding totaling at least $180 million. (Exs. F & G). Indeed, Defendants' lamentations about "car rentals" and "meals" (Cloudflare Br. at 12) pale in comparison to (1) their collective investment funding exceeding $360 million and (2) the bounty placed on Blackbird's patents, ███████████████████████████████████████████████████████ (4)

extraneous *ex parte* reexaminations petitions against unasserted Blackbird patents, and even (5) superfluous motions to "dismiss" minor aspects of Blackbird's prayer for relief. By comparison, Blackbird is much smaller by several orders of magnitude, having only six full-time employees. (Cloudflare Br. at 5).[12] It is significantly more burdensome for Blackbird to litigate in the Northern District of California than it is for Defendants to litigate in Delaware.

Further, the relevant inquiry with respect to convenience of the witnesses is not whether witnesses are merely inconvenienced by litigation, but rather, whether witnesses "actually may be unavailable for trial in one of the fora." *Jumara*, 55 F.3d at 879. Although Cloudflare identifies two former employees as unwilling to travel to Delaware, Cloudflare never explains why their knowledge is so special that none of Cloudflare's 300+ current employees could testify in the same capacity. (Cloudflare Br. at 3). Otherwise, Defendants admit that their current employees can and will attend trial in Delaware. (*See id.* at 12). Accordingly, Defendants are not "inconvenienced," within the meaning of Third Circuit law, by litigating this case in Delaware.

v.   Convenience of the Witnesses (Weighs Against Transfer)

Defendants also purport to provide a speculative litany of non-party witnesses for whom trial in California is perhaps more convenient than Delaware. (*Id.* at 13-14). Here, too, the relevant question according to the Third Circuit is whether witnesses would be unavailable for trial. *Jumara*, 55 F.3d at 879. On this issue, Defendants concede that both the inventor of the '335 Patent (Oliver Kaufmann, Germany) and the prosecuting patent attorney (the Gates & Cooper firm, Los Angeles) are outside the subpoena power of both courts. (Cloudflare Br. at 14). Thus, as to these potential witnesses, this factor is neutral. *Helicos*, 858 F. Supp. 2d at 373-74 (observing that "when the parties are simply speculating about who might be a critical enough fact witness to be

---

[12] Ms. Yates, the only employee in California, has since left Blackbird for other employment.

called to testify at trial and when neither fora has subpoena power … , this factor is neutral").

Defendants make no showing that their supposed prior art witnesses even matter. They claim only that the associated references are "likely to be germane," yet then concede that "[m]any of the[m] do not qualify as prior art" based on their current knowledge. (Cloudflare Br. 7). To create the appearance of relevance, Defendants offer a claim chart (17-283-MSG, D.I. 25, Ex. 38), but it is directed to claims not asserted in the complaints. Defendants thus assert that they "intend[] to investigate" further. (Cloudflare Br. at 7). That investigation, if it ever occurs, will involve only depositions, which occur near the witness, not the trial venue. Fed. R. Civ. P. 45(c)(1)(A). Besides, any such depositions are unlikely to yield admissible evidence, as the Federal Circuit has held that an author's testimony is largely irrelevant to understanding a prior art reference, which speaks for itself. *See Innogentics, N.V. v. Abbott Labs.*, 512 F.3d 1363, 1375 (Fed. Cir. 2008) (affirming exclusion of any testimony by prior art author "beyond the words of the [prior art patent] application"). Practically speaking, "[p]rior art inventors almost never testify." *PersonalWeb Techs. LLC v. NEC Corp. of Am., Inc.*, 2013 WL 9600333, at n.13 (E.D. Tex. Mar. 21, 2013).

Lastly, but perhaps most tellingly, Defendants knowingly presented only the evidence that tended to support transfer, to create the appearance of some non-party connection to California. (*See* Facts, Pt. III). Yet they withheld the bulk of the evidence showing otherwise. (*Id.*). Courts find that this behavior weighs against transfer. *See, e.g.*, *Realtime Data, LLC v. Rackspace US, Inc.*, 2017 WL 772653, at *8 (E.D. Tex. Feb. 28, 2017) (rejecting attempts "to cherry-pick third parties who happen to have an invention in the relevant art and are located in the litigant's preferred district in order to sway the convenience analysis").

### vi. Location of Books and Records (Neutral)

The Third Circuit in *Jumara* advised that the location of books and records is only determinative if "the files c[an]not be produced in the alternative forum." 55 F.3d at 879. Neither

Defendant makes any attempt to show its files cannot be produced in Delaware.  Indeed, as Fastly concedes "[it] stores a great deal of information in the cloud" and never affirmatively avers that any relevant paper documents even exist.  (Fastly Decl. ¶ 4).  Thus, this factor is neutral.

### 2.     The Public Interest Factors Weigh Against Transfer.

#### i.     Practical Considerations (Neutral)

Instead of addressing the issues relevant to this factor, Defendants rehash their convenience arguments under the guise of practical considerations.  (Cloudflare Br. at 17).  As discussed above, litigation in Delaware is not inconvenient for Defendants, under *Jumara*, since they identify no meaningful witnesses who are available for trial in California but not Delaware.  In examining this *Jumara* factor, courts in the District of Delaware have often cited the existence of related lawsuits as being an important "practical consideration" to credit.  *See, e.g.*, *Intellectual Ventures*, 842 F. Supp. 2d at 759.  Here, there are no such lawsuits, and this factor is neutral.

#### ii.     Administrative Difficulties (Weighs Against Transfer)

Defendants rely on generalized and retrospective statistics to argue that Delaware is busier than the Northern District of California.  (Cloudflare Br. at 18).  Specifically, Defendants point to statistics from all civil cases, not just patent cases, and to data ending December 31, 2016, thus well before the Supreme Court's *TC Heartland* decision in May, 2017.  (*Id.*).  While Defendants cite an article published the same day *TC Heartland* was decided hypothesizing that Delaware will see more patent cases after *TC Heartland* (*id.*), the actual data show that the Supreme Court's decision has had a far greater impact on the Northern District of California, where in the wake of *TC Heartland*, its share of new patent case filings has nearly tripled.  (Ex. X).

The reality is that all federal courts are busy, and experienced judges and lawyers know that time-to-trial is dictated more by the parties than the Court.  (Defendants' motions to dismiss are good examples of party-induced delay.)  Even the data cited by Defendants suggests time-to-

trial is 6.7 months **faster** in Delaware than in the Northern District. (Cloudflare Br. at 18).

Defendants also point to time-to-disposition statistics (*id.*), but those numbers are irrelevant, as

Cloudflare's CEO has vowed that "Cloudflare will not settle this case, and doesn't plan to settle

any patent troll case, ever." (Ex. K at 6). And if Defendants want to take this case to trial faster

than the Delaware average, the parties can agree to an accelerated case schedule.

### iii.    Local Interests (Weighs Against Transfer)

Defendants complain, richly so, that these cases implicate their "reputation." (Cloudflare

Br. at 19). The operative complaints allege claims of direct patent infringement, which has no

intent requirement. (17-283-MSG, D.I. 13 & 17-284-MSG, D.I. 10). Put simply, Blackbird

alleged a business tort against Defendants. Defendants, by contrast, have put their own reputation,

and that of Blackbird and its attorneys, at issue by trying these cases in the court of public opinion,

openly attacking Blackbird. The derisive term, "troll," appears some 50+ times in the original

Cloudflare blog post. (Ex. K). ███████████████████████████████████

████████████████████████████████ Cloudflare also encouraged its readers to "tweet"

Blackbird and provided a form for doing so. (*Id.* at 10). Egged on by Cloudflare's CEO, many

readers sent harassing and vulgar tweets to Blackbird. (Ex. Y).[13] That Defendants' reputation is

at issue, more than Blackbird's, is absurd. This factor weighs strongly against transfer.

### iv.    Enforceability of the Judgement (Neutral), Public Policies of the Fora (Neutral), and Familiarity with State Law (Inapplicable)

Plaintiff agrees with Defendants' assessment of these factors. (Cloudflare Br. at 17, 19).

### CONCLUSION

For at least the foregoing reasons, Blackbird respectfully requests that the Court deny

Defendants' motions to transfer to the Northern District of California.

---

[13] Blackbird is excluding some of the more profane and obscene messages it has received.

Dated: August 3, 2017

STAMOULIS & WEINBLATT LLC

OF COUNSEL:

*/s/ Stamatios Stamoulis*
Stamatios Stamoulis #4606
stamoulis@swdelaw.com
Richard C. Weinblatt #5080
weinblatt@swdelaw.com
Two Fox Point Centre
6 Denny Road, Suite 307
Wilmington, DE 19809
Telephone: (302) 999-1540

Wendy Verlander
wverlander@blackbird-tech.com
Christopher Freeman
cfreeman@blackbird-tech.com
David Gerasimow
dgerasimow@blackbird-tech.com
Blackbird Tech LLC d/b/a
Blackbird Technologies
One Boston Place, Suite 2600
Boston, MA 02108
617.307.7100

*Attorneys for Plaintiff*
Blackbird Tech LLC d/b/a
Blackbird Technologies

**CERTIFICATE OF SERVICE**

I hereby certify that on August 3, 2017, I electronically served the forgoing document on all counsel of record in this action.

/s/ Stamatios Stamoulis
Stamatios Stamoulis #4606