# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **BLACKBIRD TECH LLC d/b/a** | : | |
| **BLACKBIRD TECHNOLOGIES,** | : | |
| | : | **CIVIL ACTION** |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | **NO. 17-283** |
| **CLOUDFLARE, INC.,** | : | |
| | : | |
| **Defendant.** | : | |
| _____ | : | |
| **BLACKBIRD TECH LLC d/b/a** | : | |
| **BLACKBIRD TECHNOLOGIES,** | : | |
| | : | **CIVIL ACTION** |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | **NO. 17-284** |
| **FASTLY, INC.,** | : | |
| | : | |
| **Defendant.** | : | |
| _____ | : | |

**Goldberg, J.**                                                                 **October 11, 2017**

## <u>MEMORANDUM OPINION</u>

Plaintiff Blackbird Technologies ("Blackbird") has brought the present actions against Defendants Cloudflare Inc. ("Cloudflare") and Fastly, Inc. ("Fastly") alleging patent infringement in connection with Blackbird's U.S. Patent No. 6,453,335 (the "'335 patent"), entitled "Providing an Internet Third Party Data Channel." Defendants have jointly moved to transfer venue to the United States District Court for the North District of California. As I find the balance of conveniences weighs in favor of transfer to the Northern District, I will grant the Motions.

# I. FACTS AS SET FORTH IN THE AMENDED COMPLAINTS

## A. The Underlying Patent Claim

According to the Amended Complaints filed in both actions, the '335 patent represents an improvement to the technologies that make the internet work. The invention is more fully described as follows:

Prior to the '335 patent, internet communication protocols, such as the hypertext transfer protocol (HTTP), allowed for the exchange of data, such as documents encoded in the hypertext markup language (HTML), over the internet. These protocols generally permitted only two parties to the communication, the client and the server. As a result, third-party participation in the existing client-server communications was problematic. (Am. Compl., No. 17-283, ¶ 10; Am. Compl., No. 17-284, ¶ 10.)

The inventions claimed in the '335 patent constitute novel ways of providing an internet third-party data channel, address shortcomings of existing internet communications protocols, and extend those protocols to communications involving three parties. These results are achieved by introducing a distinct processing device, located physically and logically between the client and server, which monitors client-server data communications having predetermined properties, such as HTTP status codes. Upon detection of such communications, the device accesses a distinct data source to obtain third-party data, modifies or replaces the original data communication in response to the third-party data, and then provides the resulting data communication to the intended recipient. (Am. Compl., No. 17-283, ¶ 11; Am. Compl., No. 17-284, ¶ 11.)

In March 2017, Blackbird sued both Cloudflare and Fastly for infringing the '335 patent. The Amended Complaints in both cases allege that Defendants infringe one or more claims of

the '335 patent by importing, making, using, selling, and/or offering to sell certain web content systems and services as part of their content delivery networks. (Am. Compl., No. 17-283, ¶ 12; Am. Compl., No. 17-284, ¶ 12.)

## B. The Parties

Plaintiff Blackbird is a Delaware LLC formed on July 1, 2014, with its principal place of business in Concord, Massachusetts. Blackbird obtains rights to patents and uses its in-house expertise to litigate patent claims at reduced costs. According to the company's web page, Blackbird's "team" includes twelve individuals, none of whom reside in Delaware. (Am. Compl., No. 17-283, ¶ 1; Decl. of Grayson Cassada ("Cassada Decl."), Exs. 1, 3–22.)

Defendant Cloudflare is a Delaware corporation with its principal place of business in San Francisco, California. Cloudflare provides content-delivery, proxy, and DNS services to customers in the United States and around the world. (Decl. of Chris Merritt ("Merritt Decl.") ¶ 4.) The Amended Complaint accuses Cloudflare of maintaining a network of data centers—many of which are in the United States—that contain processing devices for monitoring data communications between user systems and origin services. (Am. Compl., No. 17-283, ¶¶ 15, 18.) In general, when a customer signs up and activates Cloudflare's services, internet users cease connecting with customer servers and are instead directed to an IP address that establishes a connection to a Cloudflare server. These servers are responsible for much of the accused functionality at the center of the patent infringement claim. (Merritt Decl. ¶¶ 4, 6.)

Defendant Fastly is also a Delaware corporation with its principal place of business in San Francisco, California. (Decl. of Charles Neerdaels ("Neerdaels Decl."), ¶ 3.) The infringement allegations against Fastly are largely identical to those against Cloudflare. (Am. Compl., No. 17-284, ¶¶ 15, 18.)

## C.     Procedural History

Plaintiff initiated suit against Defendants on March 16, 2017.  On May 26, 2017, this case was reassigned to the undersigned's docket.[1]  On June 20, 2017, Cloudflare filed a Motion to Transfer Venue to the United States District Court for the Northern District of California.  Fastly thereafter filed a Motion to Transfer and Joinder in Cloudflare's Motion to Transfer Venue. Plaintiff responded to both Motions on August 3, 2017, and Cloudflare filed a reply brief on August 10, 2017.  I held oral argument on the Motion on September 21, 2017.

## II.     STANDARD FOR TRANSFER OF VENUE

Under 28 U.S.C. § 1404(a), a district court may transfer an action to any other district "where it might have been brought" if this transfer is "for the convenience of parties and witnesses" and "in the interest of justice."  28 U.S.C. § 1404(a); see also In re Genentech, Inc., 566 F.3d 1338, 1341–42 (Fed. Cir. 2009).  The determination of whether to transfer venue pursuant to § 1404(a) is governed by federal law.  See Jumara v. State Farm Ins. Co., 55 F.3d 873, 877-878 (3d Cir. 1995).

Analysis of a request for a § 1404(a) transfer has two components.  First, both the original venue and the requested venue must be proper.  Jumara, 55 F.3d at 879.  Venue in a patent infringement action is governed solely and exclusively by the patent venue statute, 28 U.S.C. § 1400(b).  See TC Heartland LLC v. Kraft Foods Grp. Brands LLC, 137 S. Ct. 1514, 1519 (2017).  In such a case, venue is proper both where a corporate defendant "resides" and "where the defendant has committed acts of infringement, and has a regular and established

---

[1]     Due to existing and expected vacancies, the United States District Court for the District of Delaware invited a number of visiting judges from the United States District Court for the Eastern District of Pennsylvania to handle District of Delaware cases.  On May 18, 2017, the Honorable D. Brooks Smith from the United States Court of Appeals for the Third Circuit officially designated me as a visiting judge for the District of Delaware, pursuant to 28 U.S.C. § 292(b).

place of business." <u>Bristol-Myers Squibb Co. v. Mylan Pharms., Inc.</u>, No. 13-379, 2017 WL 3980155, at *1 (D. Del. Sept. 11, 2017) (summarizing 28 U.S.C. § 1400(b)).

Second, the purpose of allowing § 1404(a) transfers is "'to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense.'" <u>Mosaid Techs., Inc. v. Sony Ericsson Mobile Commc'ns (USA), Inc.</u>, 885 F. Supp. 2d 720, 723 (D. Del. 2012) (quoting <u>Van Dusen v. Barrack</u>, 376 U.S. 612, 616 (1964). Accordingly, the court must undertake a balancing test comprised of various public and private interest factors. <u>Jumara</u>, 55 F.3d at 879. The burden falls on the moving defendant to show the desirability of transferring venue. <u>Boston Sci. Corp. and Boston Sci. SciMed, Inc. v. Cook Grp. Inc. and Cook Med. LLC</u>, No. 15-980, 2017 WL 3996110, at *4 (D. Del. Sept. 11, 2017).[2]

Analyses of transfers under § 1404(a) are "flexible and must be made on the unique facts of each case." <u>Job Haines Home for the Aged v. Young</u>, 936 F. Supp. 223, 227 (D.N.J. 1996) (internal quotations omitted). In weighing the various factors, the court should not grant a motion to transfer unless the moving party can demonstrate that the transferee venue is "clearly more convenient" than the venue chosen by the plaintiff. <u>In re Nintendo Co., Ltd.</u>, 589 F.3d 1194, 1197 (Fed. Cir. 2009) (quotations omitted). Such motions are "not to be liberally granted." <u>Intellectual Ventures I LLC v. Altera Corp.</u>, 842 F. Supp. 2d 744, 750 (D. Del. 2012) (quoting <u>Shutte v. Armco Steel Corp.</u>, 431 F.2d 22, 25 (3d Cir. 1970) (internal quotation marks omitted)).

---

[2]    "Appropriate supporting evidence includes documents, affidavits, or statements concerning the availability of material witnesses, relative ease of access to evidence, and business or personal hardships that might result for the moving parties." <u>Fellner v. Phila. Toboggan Casters, Inc.</u>, No. 05-2052, 2005 WL 2660351, at *4 (E.D. Pa. Oct. 18, 2005).

Nonetheless, the court's discretion is broad in deciding whether to transfer. See Plum Tree, Inc. v. Stockment, 488 F.2d 754, 756 (3d Cir. 1973).

## III.    DISCUSSION

Defendants move to transfer this case, pursuant to 28 U.S.C. § 1404(a), to the United States District Court for the Northern District of California. Plaintiff challenges any venue transfer, alleging that: (1) the case could not have been brought in the Northern District of California; and (2) the Jumara factors weigh against transfer. Considering each argument individually, I find that transfer is both possible and proper.

### A.    Whether the Case Could Have Been Brought in the Northern District California

Section 1404(a) permits the court to transfer an action to "any other district or division where it might have been brought." 28 U.S.C. § 1404(a). "Accordingly, the court may only transfer to . . . [another district] if venue would have been proper there and if that district court could have exercised personal and subject matter jurisdiction over this action." Smart Audio Techs., LLC v. Apple, Inc., 910 F. Supp. 2d 718, 728 (D. Del. 2012) (citing 17 James Wm. Moore et al., Moore's Federal Practice § 111.12[b] (3d ed. 2012)).

Venue in patent infringement suits is governed solely and exclusively by 28 U.S.C. § 1400(b). TC Heartland, 137 S. Ct. at 1519. This statute provides that "[a]ny civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b).

The first prong of § 1400(b)—where defendant resides—was recently interpreted by the United States Supreme Court in TC Heartland LLC v. Kraft Foods Grp. Brands LLC, 137 S. Ct. 1514 (2017). Rejecting the notion that a party "resides" where it has its principal place of

business, the Court found that for purposes of § 1400(b), a domestic corporation "resides" only in its state of incorporation.  Id. at 1521.  In the present case, both Cloudflare and Fastly are incorporated in Delaware.  As such, venue in the Northern District of California would not be proper under the first prong of § 1400(b).

The second prong of § 1400(b), not addressed in TC Heartland, contains two prerequisites to establishing proper venue:  (1) the defendant must have committed acts of infringement in the proposed district and (2) the defendant must have a regular and established place of business in the proposed district.  Magee v. Essex-Tec Corp., 704 F. Supp. 543, 545 (D. Del. 1988).  What constitutes an act of infringement is determined by reference to the definition of patent infringement in 35 U.S.C. § 271(a), which states that patent infringement occurs whenever one "without authority makes, uses or sells any patented invention within the United States during the term of the patent therefor."  35 U.S.C. § 271(a).  It is well established that performance of only one of the three statutorily enumerated activities of manufacture, use or sale constitutes patent infringement.  Magee, 704 F. Supp. at 545 (citing Roche Products v. Bolar Pharm. Co., 733 F.2d 858, 861 (Fed. Cir. 1984)).  In other words, an "act of infringement" may consist of the manufacture, use, or sale of the patented invention.  Id. (citing 1 Moore's Federal Practice 0.144[9] at 1509–10 n.39).

Here, it is undisputed that both Defendants' headquarters are in San Francisco, California, which is where they maintain their regular and established places of business.  Thus, the only remaining question, under the second prong of § 1400(b), is whether Defendants committed "acts of infringement" in California.  Plaintiff argues that Defendants fail to show that infringement "occurs entirely within the Northern District of California."  (Pl.'s Resp. Opp'n Mot. to Transfer  8.)  Plaintiff notes that, under section 1400(b), a method claim is infringed

within a district only if the whole system is put into service there.  Id. (citing NTP, Inc. v. Research in Motion, Ltd., 418 F.3d 1282, 1318 (Fed. Cir. 2005) ("A method or process consists of one or more operative steps, and, accordingly, '[i]t is well established that a patent for a method or process is not infringed unless all steps or stages of the claimed process are utilized.'")).  Plaintiff goes on to contend that claim 8 of the '335 Patent is directed to "[a] method for providing an internet third party data channel," while claim 24 covers "[a]n apparatus" for doing the same.  (Id.)  Thus, according to Plaintiff, although some portion of the accused system is located in the Northern District of California, the data channels connecting the various network elements are found throughout the country.  (Id. at 9.)  Plaintiff therefore urges that California is not clearly the situs of infringement.  (Id.)

Contrary to Plaintiff's argument, not *all* of the alleged infringing activity needs to have occurred within California so long as some act of infringement took place there.  The Amended Complaint alleges that Defendants infringe the '335 patent, "by importing, making, using, selling and/or offering to sell certain web content systems and services as part of its content delivery network ('CDN')."  (Am. Compl., No. 17-283, ¶ 13; Am. Compl., No. 17-284, ¶ 13.)  It further avers that both Cloudflare's and Fastly's "CDN performs a method, and also includes an apparatus, 'for providing an internet third party data channel, said party data channel being established within an existing data channel between an internet server and an internet client, said third party data channel connecting a data source distinct from said internet server to said internet client.'"  (Id. ¶ 14.)

According to both Defendants, the "making" of the alleged infringing technology occurred in California.  Cloudflare's Chief Revenue Officer, Chris Merritt, has averred that the precise services accused of being infringing were "designed and developed in San Francisco,"

Cloudflare employees who are responsible for "implementing the accused functionality work in San Francisco," and "Cloudflare uses the accused functionality from its regular and established place of business in San Francisco." (Id. ¶¶ 6–7.) Likewise, Charles Neerdaels, Fastly's Senior Vice President of Engineering, has attested to the fact that most of the members of the technical team responsible for the development of Fastly's accused technology reside in San Francisco, and two of the three data centers which Plaintiff alleges to be part of the Content Delivery Network are located in California. (Neerdaels Decl. ¶ 5.) The declarations of Merritt and Neerdaels are uncontested. As such, Defendants make or use the accused functionality in California, thereby constituting "acts of infringement" in satisfaction of § 1400(b). Because Defendants maintain a regular place of business in California and have allegedly committed acts of infringement in California, I find that this case could have been brought in the United States District Court for the Northern District of California.

## B. The *Jumara* Factors

Having cleared the first hurdle of § 1404(a), Defendants must now establish that the private and public factors set forth by the Third Circuit in Jumara favor a remand. Under Jumara, the private interests include: (1) the plaintiff's forum preference as manifested in the original choice; (2) the defendants' preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses; and (6) the location of books and records. Id. at 879. The public interests include: (1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding controversies at home;

(5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases.

### 1. The Private Interests

#### a. *Plaintiff's Forum Preference as Manifested in the Original Choice*

The first private interest factor is the "plaintiff's forum preference as manifested in the original choice." Jumara, 55 F.3d at 879. The court generally accords substantial weight to this forum decision. See, e.g., AIP Acquisition LLC v. iBasis, Inc., No. 12–616, 2012 WL 5199118, at *2 (D. Del. Oct. 19, 2012); Mitek Sys. v. United Servs. Auto. Assoc., Inc., No. 12-462, 2012 WL 3777423, at *5 (D. Del. Aug. 30, 2012).

Several considerations, however, may decrease the weight given to this factor. First, because the rule of deference to a plaintiff's choice assumes that a home forum is inherently more convenient, see Lony v. E.I. DuPont de Nemours & Co., 886 F.2d 628, 633–34 (3d Cir. 1989), when the chosen forum is actually not inherently more convenient for the plaintiff, the plaintiff's preference is accorded less weight. In re Link-A-Media Devices Corp., 662 F.3d 1221, 1223 (Fed. Cir. 2011); see also Linex Techs., Inc. v. Hewlett-Packard Co., No. 11-400, 2013 WL 105323, at *3 (D. Del. Jan. 7, 2013) ("[W]hen a plaintiff chooses to bring an action in a district where it is not physically located, its forum preference is entitled to something less than the paramount consideration . . . .").

Second, if a plaintiff incorporates in a particular State for litigation purposes only, the plaintiff's choice of venue in that State is viewed with some skepticism. In re Microsoft Corp., 630 F.3d 1361, 1365 (Fed. Cir. 2011) (noting that where a party either transfers documents to a venue or incorporates in that venue in anticipation of litigation, such actions are "ephemeral, and a construct for litigation and appear[] to exist for no other purpose than to manipulate venue.");

see also Ithaca Ventures k.s. v. Nintendo of Am., No. 13-824, 2014 WL 4829027, at * 2 (D. Del. Sept. 25, 2014) (noting that a plaintiff's organization under Delaware law mere weeks before filing the lawsuit suggests that its organization in Delaware was motivated by litigation concerns).

In Blackbird Tech LLC v. TuffStuff Fitness, Int'l, Inc., No. 16-733, 2017 WL 1536394 (D. Del. Apr. 27, 2017), another patent suit brought by the plaintiff in this case, the court specifically addressed the deference to be given to the plaintiff's choice of a Delaware forum. Recognizing that Blackbird's incorporation under Delaware law must be afforded some deference, the court remarked that "the fact that Delaware is not home to Blackbird's principal place of business reduces somewhat the weight this factor is accorded." Id. at *3. The court also observed that when a plaintiff organization is motivated significantly by litigation efforts, the weight afforded to the plaintiff's choice of forum is minimized. It reasoned that "a non-practicing entity with minimal connections to Delaware cannot reap the full benefits of heightened deference." Id. (citing Memory Integrity, LLC v. Intel Corp., No. 13-1804, 2015 WL 632026 (D. Del. Feb. 13, 2015) (further citations omitted).

For similar reasons, I find that although Plaintiff's choice of a Delaware forum is entitled to some weight, it does not merit "substantial" or "paramount" weight. Although all of the parties are incorporated in Delaware,[3] Blackbird has no physical presence in that state. As a corporation, it exists simply to acquire patents and file patent-infringement lawsuits. (Cassada

---

[3]  Plaintiff argues that the Supreme Court's TC Heartland decision "emphasized the state of incorporation as one of a few proper venues, if not the only proper venue, in many such cases" and "marks a return to an era when state of incorporation mattered greatly for the purposes of venue." (Pl.'s Resp. Opp'n Mot. to Transfer 14.) I find no merit to this argument. TC Heartland focused solely on the definition of "resides" in 28 U.S.C. § 1400(b) and the meaning Congress intended for that term to have when enacting § 1400(b). 137 S. Ct. at 1519. TC Heartland did not find that state of incorporation bears more heavily on the venue transfer analysis than all other factors.

Decl., Ex. 3.)  It keeps its principal place of business, all of its operations, and all of its employees in Massachusetts.  (Id. Ex. 3–22.)  And Blackbird's organization in Delaware appears to have been driven, at least in part, by a desire to obtain a favorable forum for litigation. Blackbird incorporated in Delaware on July 1, 2014.  (Id. ¶ 2.)  Although it did not acquire the '335 Patent in issue until more than two years later, it almost immediately began a steady pattern of filing patent-infringement cases in the District of Delaware, raising some question as to its motivation for its Delaware incorporation.  (Id., Ex. 22.)

### b.    Defendants' Preference

The next private interest factor is the defendants' forum preference.  Jumara, 55 F.3d at 879.  By filing their motion to transfer, Defendants have indicated that they would rather litigate in California, the site of their principal places of business.  Although this factor is entitled to considerably less weight than Plaintiff's preference, EVCO Tech. & Dev. Co., LLC v. Precision Shooting Equip., Inc., 379 F. Supp. 2d 728, 730 (E.D. Pa. 2005), it is nonetheless a factor in favor of transfer.

### c.    Whether the Claim Arose Elsewhere

The next factor considers where Plaintiff's claims arose.  Plaintiff argues that its infringement claim is not based on the design of an accused product, but rather on the practice of a patented method.  It goes on to assert that the design or making of a method in a method claim is irrelevant because "'[a] method claim is infringed only by one practicing the patented method.'"  (Pl.'s Resp. Opp'n Mot. to Transfer 15 (quoting Schumer v. Lab. Computer Sys., Inc., 308 F.3d 1304, 1309 n.3 (Fed. Cir. 2002)).  Plaintiff thus concludes that "[t]o the extent Defendant's infringement of the '335 Patent occurs in any single district, the claims here arose in Delaware just as much as they arose in California," thereby making this factor neutral.  (Id.)

Under this factor, the court "typically focuses on the location of the production, design and manufacture of the accused instrumentalities." Papst Licensing GmbH & Co. KG v. Lattice Semiconductor Corp., 126 F. Supp. 3d 430, 439 (D. Del. 2015). "Thus, when the defendant in a patent infringement action operates on a national or global level, this factor is typically neutral." Smart Audio Techs., LLC v. Apple, Inc., 910 F. Supp. 2d 718, 730 (D. Del. 2012).

Nonetheless, courts have recognized that infringement claims arise, to some extent, where the allegedly infringing products are designed and manufactured. Id. (citing Wacoh Co. v. Kionix, Inc., 845 F. Supp. 2d 597, 602 (D. Del. 2012)). Therefore, even if the allegedly infringing products are sold nationwide, where at least some of the research and development activities relating to those products occurred in the proposed transferee district, the "location of operative events" factor will weigh in favor of transfer. Intellectual Ventures I LLC v. Altera Corp., 842 F. Supp. 2d 744, 755 (D. Del. 2012); see also MoneyCat Ltd. v. PayPal Inc., No. 13-1358, 2014 WL 2042699, at *5 (D. Del. May 15, 2014) (even where users of the alleged infringing services exist across the U.S., where the defendant alleges, without challenge, that most of the decisions "regarding overall design, marketing, and development" of the services occurred in the proposed venue, this factors weighs in favor of transfer); Wacoh Co., 845 F. Supp. 2d at 602 (observing that infringement actions can be said to arise "where the allegedly infringing products were designed and manufactured" because even though acts of infringement were committed throughout the country, product development occurred in proposed transferee district).

Cloudflare argues, without dispute, that its accused methods arose from activities in California. Cloudflare's services were designed and developed in San Francisco, Cloudflare employees who are responsible for implementing the accused functionality work in San

Francisco, and Cloudflare uses the accused functionality from its regular and established place of business in San Francisco. (Merritt Decl. ¶ 7.) Further, 266 of Cloudflare's 414 employees work at its headquarters in California, and three of its twenty-two nationwide data centers are in California. (Id. ¶¶ 11, 12.) No Cloudflare employees or data centers reside in Delaware. (Id.) Finally, all members of Fastly's technical team responsible for the development of the accused technology, all members of its finance team, and the vast majority of its marketing team are in California. (Neerdaels Decl. ¶ 3.) As this evidence is sufficient to establish that most, if not all, of the development of the infringing method occurred in California, and none of it took place in Delaware, this factor advocates in favor of transfer.

           *d.*      *Convenience of the Parties as Indicated by Their Relative Physical and Financial Condition*

The fourth factor requires consideration of the convenience of the parties. The Federal Circuit has noted that by incorporating in Delaware, parties "both willingly submitted to suit there, which weighs in favor of keeping the litigation in Delaware." Micron Tech., Inc. v. Rambus Inc., 645 F.3d 1311, 1332 (Fed. Cir. 2011); see also Scientific Telecomm., LLC v. Adtran, Inc., No. 15-647, 2016 WL 1650760 (D. Del. Apr. 25, 2016) ("[D]efendant clearly operates on a global basis, and its incorporation in Delaware reflects its recognition that Delaware is an appropriate jurisdiction for resolution of commercial disputes through litigation."). "Thus, 'absent some showing of a unique or unexpected burden, a company should not be successful in arguing that litigation in its state of incorporation is inconvenient.'" Intellectual Ventures I, 842 F. Supp. 2d at 756 (quoting ADE Corp. v. KLA-Tencor-Corp., 138 F. Supp. 2d 565, 572 (D. Del. 2001)).

The Federal Circuit, however, has explicitly held that the mere fact of a defendant's incorporation in Delaware is not a dispositive factor in the venue transfer analysis. In re Link-A-

Media, 662 F.3d 1221, 1223–24 (Fed. Cir. 2011). Rather, the court must ultimately determine how much inconvenience each party will suffer should it be forced to litigate in the other party's desired forum as opposed to its own. Smart Audio Techs., 910 F. Supp. 2d at 731. To that end, several other considerations bear weight, including: "(1) the parties' physical location; (2) the associated logistical and operational costs to the parties' employees in traveling to Delaware (as opposed to the proposed transferee district) for litigation purposes; and (3) the relative ability of each party to bear these costs in light of its size and financial wherewithal." Mitel Networks Corp. v. Facebook, Inc., 943 F. Supp. 2d 463, 471 (D. Del. 2013) (quotations omitted).

Plaintiff contends that Defendants have not made the requisite showing that litigating in Delaware would impose "a unique or unexpected burden" sufficient to overcome the presumption of convenience resulting from Defendants' incorporation in Delaware.[4] Focusing on Cloudflare in particular, Plaintiff notes that Cloudflare recently received an investment of at least $180 million. (Pl.'s Resp. Opp'n Mot. to Transfer, Decl. of David Gerasimow ("Gerasimow Decl."), Ex. F.) It also avers that Cloudfare has recently expended substantial sums of money (1) challenging Blackbird's patents with the U.S. Patent and Trademark Office; (2) funding a crowdsourced effort to find evidence to invalidate Blackbird's patents, including putting a bounty on all of these patents; (3) using private investigators to investigate both Blackbird and its attorneys; and (4) filing complaints against Blackbird attorneys with bar

---

[4]    Plaintiff also argues that Cloudflare's various "extrajudicial activities" of attacking Blackbird and challenging their ability to pursue lawsuits undermine any claim it might have to Delaware being inconvenient. The Jumara analysis, however, focuses on the particular case pending before the court and not a party's extrajudicial activities. Jumara, 55 F.3d at 879 (considering whether "on balance *the litigation* would more conveniently proceed" in an alternate forum) (emphasis added) (internal quotation marks omitted). Simply because Cloudflare has gone outside of California to litigate matters regarding the validity of Blackbird's patents and the conduct of Blackbird's lawyers does not mean that it would be just as convenient to litigate the present patent infringement case outside of California.

association disciplinary counsel in Massachusetts and Illinois. As such, Plaintiff contends that Cloudflare's lamentations about travel expenses pale in comparison to these activities. By contrast, Plaintiff asserts that Blackbird is a much smaller organization with only six full-time employees, making it significantly more burdensome for Blackbird to litigate in the Northern District of California than for Defendant to litigate in Delaware.

While Plaintiff's argument has some merit, I find that this factor weighs slightly in favor of transfer. Both Cloudflare and Fastly are based in San Francisco, where almost all of their employees reside. Although both Defendants are incorporated in Delaware and would likely not suffer great financial hardship by litigating there, it would naturally be much more convenient and less costly for Defendants to litigate in California. MoneyCat Ltd., 2014 WL 2042699, at *5 (recognizing that because the bulk of relevant evidence in a patent infringement case usually comes from the accused infringer, particularly where the plaintiff does not have a product or service of its own, "there is clearly a convenience advantage in allowing [the defendant] to litigate nearer to its headquarters.").

I also note that Plaintiff is not based in Delaware either, but rather maintains all of its offices and employees in Massachusetts. Thus, whether the case proceeds in Delaware or California, Plaintiff's employees will still have to travel and incur associated travel costs. As Delaware is inconvenient for both Plaintiff and Defendants, and as California would be significantly more convenient for Defendants, I find this factor supports transfer.

    *e.*    *Convenience of Witnesses*

The next private factor looks to "the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora." Jumara, 55 F.3d at 879. This "is a particularly significant factor in a court's decision whether to transfer."

<u>Idasetima v. Wabash Metal Prods., Inc.</u>, No. 01-197, 2001 WL 1526270, at *2 (E.D. Pa. Nov. 29, 2001) (citing <u>Lindley v. Caterpillar, Inc.</u>, 93 F. Supp. 2d 615, 617 (E.D. Pa. 2000)). There are many different types of witnesses, however, and each one carries a different weight. "[F]act witnesses who possess first-hand knowledge of the events giving rise to the lawsuit . . . have traditionally weighed quite heavily in the 'balance of convenience' analysis." <u>Affymetrix, Inc. v. Synteni, Inc.</u>, 28 F. Supp. 2d 192, 203 (D. Del. 1998). "[T]he Court should be particularly concerned not to countenance undue inconvenience to third-party witnesses, who have no direct connection to the litigation." <u>Intellectual Ventures I</u>, 842 F. Supp. 2d at 757. Party witnesses or witnesses who are employed by a party, on the other hand, have little impact on the "balance of convenience" analysis since each party is obligated to procure the attendance of its own employees for trial. <u>Affymetrix</u>, 28 F. Supp. 2d at 203. Likewise, expert witnesses, particularly those in a patent infringement action, also carry little weight because they "are usually selected because of their reputation and special knowledge without regard to their residences and are presumably well compensated for their attendance, labor and inconvenience, if any." <u>Id.</u> (quotations omitted).

In order for a party seeking venue transfer to convincingly argue that this factor favors transfer, it must provide specificity as to: "(1) the particular witness to whom the movant is referring; (2) what that person's testimony might have to do with a trial in this case; and (3) what reason there is to think that the person will 'actually' be unavailable for trial (as opposed to the proffer of a guess or speculation on that front)." <u>Papst Licensing GmbH & Co. KG v. Lattice Semiconductor Corp.</u>, 126 F. Supp. 3d 430, 442 (D. Del. 2015). A significant distance between an identified witness and the forum may suggest, in some instances, that the witness will be unwilling to appear freely. <u>Smart Audio Techs.</u>, 910 F. Supp. 2d at 732. "It is the defendant's

burden to show both the unavailability of a particular witness and that witness's importance to the defendant's case." Tessera, Inc. v. Sony Elecs., Inc., No. 10-838, 2012 WL 1107706, at *6 (D. Del. Mar. 30, 2012).

Cloudflare provides a chart that identifies twenty-eight third-party individuals who are either former Cloudflare employees or authors of key pieces of prior art.[5] (Cloudflare's Mem. Supp. Mot. to Transfer, p. 13.) Of those individuals, all but nine live in California and sixteen are within the Northern District of California's subpoena power.[6] For those that reside outside California, seven are on or near the west coast (Washington, Oregon, Colorado, and Utah), while two live in Europe and have no significant convenience interest in either venue.

Cloudflare also provides documentation regarding the prior art information each of these witnesses may have. (Cloudflare's Mot. to Transfer, Exs. 26–27.) It further identifies engineers, academics, and companies near the Northern District of California that were working with caching proxy services before the '335 patent was filed and, thus, are likely to have additional information about invalidating prior-art systems. (Id., Ex. 43–53.) Finally, it submits Declarations from two former Cloudflare employees residing in California—both of whom were involved in working on the functionality of the servers in Cloudflare's data centers—affirmatively stating that they would not travel to Delaware for this case. (See Declaration of Rajeev Sharma; Declaration of Matthieu Tourne.)

---

[5] Although Fastly does not provide a similar chart of prior art witnesses, it relies on Cloudflare's exhibits in support of their Motion to Transfer. Because the prior art witnesses would be the same in both cases, I will apply any analysis regarding Cloudflare's witnesses to Fastly's Motion to Transfer.

[6] Under Federal Rule of Civil Procedure 45(c)(1)(A), a subpoena may command appearance at a trial only within 100 miles of where that person resides, is employed, or regularly transacts business in person.

Plaintiff challenges Defendants' witness evidence on several bases. First, it argues that Defendants make no showing that the supposed prior art witnesses even matter. Plaintiffs reason that any investigation that Defendants have to undertake into domestic use of the disclosed systems prior to the filing of the '335 patent will take place only in depositions, which occur near the witness, not the trial venue. Plaintiff also contends that even if these depositions reveal that some of the identified authors have prior art knowledge, they are not likely to testify since the Federal Circuit has held that an author's testimony is largely irrelevant to understanding a prior art reference, which speaks for itself. (Id. (citing Innogentics, N.V. v. Abbott Labs., 512 F.3d 1263, 1375 (Fed. Cir. 2008)). Finally, Plaintiff asserts that Defendants cherry-picked their prior art witnesses. Although Cloudflare received some ninety-six submissions of prior art related to the '335 Patent, its motion purportedly excluded all submissions of alleged prior art with inventors or authors not closer to California than Delaware. (Id. at 6; Gerasimow Decl., Ex W.)

Notwithstanding Plaintiff's challenges, I find that this factor weighs in favor of transfer. Although much of Defendants' "investigation" into prior art references will take place in the form of depositions, these witnesses may be called upon to testify in court to the extent they have information germane to the '355 patent. As prior art will likely be an issue at trial and as the prior art inventors may have relevant and material information,[7] the location of potential prior art witnesses must be a consideration in the venue transfer analysis.[8]

---

[7]   Contrary to Plaintiff's argument that prior art witnesses almost never testify, the Federal Circuit has recognized that although a prior art author cannot provide information "that might not have been understood by a person of ordinary skill in the art just from reading the application," he or she can testify regarding the actual words and content of the prior art application. Innogenetics, N.V. v. Abbott Labs., 512 F.3d 1363, 1375 (Fed. Cir. 2008).

[8]   See In re Genentech, Inc., 566 F.3d 1338, 1343 (Fed. Cir. 2009) (rejecting district court finding that defendant failed to identify any "key witnesses" within the proposed venue; "[r]equiring a defendant to show that the potential witness has more than relevant and material

I also disagree with Plaintiff's "cherry-picking" argument. Of the ninety-six submissions of prior art related to the '335 patent, twenty-nine have inventors in California, while another five are on the west coast (Oregon and Washington). Of the remaining submissions, only one has an inventor in Delaware and fifteen have inventors in surrounding states (Maryland, New Jersey, New York, Pennsylvania). Multiple others reside in the western half of the United States (Colorado, Utah, Texas). (Gerasimow Decl., Ex. W.) Based on numbers alone, the Northern District of California is a more convenient forum.[9]

More importantly, however, Cloudflare convincingly argues that although there are many *potential* prior-art witnesses, it has focused on only the relevant and important sources of prior art.[10] (Cloudflare's Mot. to Transfer, Ex. 38; <u>see also</u> <u>id.</u>, ex. 26-53.) By contrast, Plaintiff has presented no competing evidence showing that any of the prior art inventors or academics who reside on the East Coast have information equal or greater in value to those identified in Cloudflare's motion. Finally, Plaintiff fails to address Cloudflare's showing that two former employees with relevant information regarding the functionality of the accused servers are outside this Court's subpoena power and would not willingly travel to Delaware for this case. Nor does Plaintiff identify any other potential witnesses that reside in or near Delaware.

information at this point in the litigation or risk facing denial of transfer on that basis is unnecessary.").

[9] See <u>Genentech</u>, 566 F.3d at 1345 ("Because a substantial number of material witnesses reside within the transferee venue and the state of California, and no witnesses reside within the Eastern District of Texas [even though many others were travelling from other states or countries], the district court clearly erred in not determining this factor to weigh substantially in favor of transfer."); <u>In re Nintendo Co., Ltd.</u>, 589 F.3d 1194, 1199 (Fed. Cir. 2009) (directing courts to consider witnesses distance to the different fora and acknowledging that additional travel time increases expenses and likelihood of time away from home and regular employment).

[10] In support of its argument, it has provided a chart detailing why six of its identified references, all of which are California-based, were likely to be important to claim 1 of the patent-in-suit. Defendants contend that the elements of Claim 1 are also elements of Claim 8, which is specifically referenced by Plaintiff in its infringement suit.

In short, Defendants have clearly established that most of the potential, non-party witnesses live in or near California. Therefore, this fact weighs substantially in favor of transfer.

<em>f. Location of Books and Records</em>

The final private interest factor considers the location of books and records. Citing to the Third Circuit's decision in <u>Jumara</u>, Plaintiff argues that "the location of books and records is only determinative 'if the files c[an]not be produced in the alternative forum.'" (Pl.'s Resp. Opp'n Mot. to Transfer 18 (quoting <u>Jumara</u>, 55. F.3d at 879)). As Defendant has not made any attempt to show that its files could not be produced in Delaware, Plaintiff claims this factor is neutral.

Plaintiff dismisses this factor too quickly. "The fact that that access to some sources of proof presents a lesser inconvenience now than it might have absent recent developments does not render this factor superfluous." <u>In re Nintendo Co. Ltd.</u>, 589 F.3d 1194, 1199 (Fed. Cir. 2009) (internal quotations and quotation marks omitted). "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." <u>Genentech</u>, 566 F.3d at 1345 (quoting <u>Neil Bros. Ltd. v. World Wide Lines, Inc.</u>, 425 F. Supp. 2d 325, 330 (E.D.N.Y. 2006)) (internal quotation marks omitted). If most of the evidence resides in the proposed transferee forum and none resides in the transferor forum, it is error to not weigh this factor heavily in favor of transfer. <u>Nintendo</u>, 589 F.3d at 1199–200.

Defendant Cloudflare has produced an affidavit explicitly stating that "[r]elevant financial, technical sales, and marketing documents are located at Cloudflare's headquarters in San Francisco. Cloudflare does not maintain any documents in Delaware." (Merritt Decl. ¶ 13.) Similarly, Defendant Fastly has produced an affidavit averring that "Fastly stores a great deal of

information in the cloud. However, to the extent it has relevant paper documents; those documents are located in San Francisco in the custody of the engineering, finance and marketing teams." (Neerdaels Decl. ¶ 4.) Plaintiff identifies no evidence from any party or third party located in Delaware. Accordingly, I find this factors weighs in favor of transfer.

### 2. Public Interests

*a. Practical Considerations that Could Make Trial Easy, Expeditious, or Inexpensive*

The first public interest factor requires the weighing of practical considerations that could make the trial easy, expeditious, or inexpensive. In support of this factor, Defendant reiterates that because it is based in San Francisco and all of its identified employee witnesses reside there, litigation in San Francisco would save Cloudflare substantial amounts in costs and employee productivity and will allow for easier access to Cloudflare's books and records.

These arguments, while important to some of the previous considerations, are not as relevant to this factor, which focuses "the existence of related lawsuits in one of the fora at issue." Ross v. Institutional Longevity Assets LLC, No. 12–102, 2013 WL 5299171, at *13 (D. Del. Sept. 20, 2013) ("In examining this Jumara factor, our Court has often cited the existence of related lawsuits in one of the fora at issue as being an important practical consideration to be taken into account.") (internal quotation marks and citation omitted); Cashedge, Inc. v. Yodlee, Inc., No. 06–170, 2006 WL 2038504, at *2 (D. Del. July 19, 2006) (finding that the "practical considerations" factor was "strongly" in favor of transfer where the proposed transferee court had presided over litigation regarding the same parties, related patents-in-suit and similar technologies, including engaging in a technology tutorial, arguing Markman issues in nine related patents, and commencing discovery on seemingly related products and technologies).

The sole actions of which I am aware regarding the '335 patent are those involving Cloudflare and Fastly, both of which were filed in Delaware. Both Defendants, however, have filed motions seeking transfer to the Northern District of California. For practical purposes, both cases will either remain in Delaware or be transferred to the Northern District of California. In either event, judicial economy will be served, meaning that this factor does not carry any weight in the present transfer analysis.

b.     *Administrative Difficulty Resulting from Court Congestion*

The next factor is the "relative administrative difficulty in the two fora resulting from court congestion." Jumara, 55 F.3d at 879. Defendants argue that because Delaware is one of the busiest patent jurisdictions in the nation, this case is likely to reach trial or resolution more quickly in the Northern District of California rather than in Delaware. They reason that (a) the Northern District of California's median time from filing to disposition in civil cases is 7.3 months, and from filing to trial in civil cases is 31.2 months; (b) only 6.5% of its civil cases are over three years old; and (c) it has 0.0 "Vacant Judgeship Months" with fourteen judgeships occupied. (Cassada Decl., Exs. 55, 58, 59.) By comparison, (a) the District of Delaware's median time from filing to disposition is 9.2 months; (b) its median time from filing to trial in civil cases is 24.5 months; (c) 14.1% of its civil cases are over three years old; and (d) two of its four judgeships are vacant. (Id., Ex. 55.) Defendants go on to assert that the Supreme Court's recent decision in TC Heartland is expected to lead to a flood of new Delaware patent cases. (Id., Ex. 54.)

Plaintiff rejects Defendants' statistics, arguing that "[t]he reality is that all federal courts are busy, and experienced judges and lawyers know that time-to-trial is dictated more by the parties than the Court." (Pl.'s Opp'n Mot. to Transfer 19.) Even relying on Defendants' data,

Plaintiff remarks that the time-to-trial in Delaware is 6.7 months faster than in the Northern District of California, and new patent case filings have nearly tripled in the Northern District of California. (Gerasimow Decl., Ex. X.)

The parties' use and comparison of statistics regarding time of filing of case to either disposition or trial will not weigh heavily in the ultimate outcome of this transfer motion. Nonetheless, I would be remiss to ignore several key points that bear on this factor.

According to Plaintiff's own exhibit, from May 22, 2017 to June 7, 2017, Delaware was the leading jurisdiction in the filing of new patent cases, receiving 16.4% of those cases. The Northern District of California, while second in the rankings, has received only 11.3% of new patent cases. (Id.) These statistics become more meaningful in light of the fact that out of Delaware's four open judgeships, two are vacant, while all fourteen of the Northern District of California's judgeships are filled. Indeed, in order to alleviate the significant burden on the District of Delaware, a number of "visiting" judges from the Eastern District of Pennsylvania, including the undersigned, have agreed to handle many of these cases. As astutely observed by one of my colleagues:

> This District is now reduced to two active judges, only increasing the number of cases on each judge's docket here. While visiting judges can assist, we also must manage our busy urban dockets and, as much as we may try, cannot fully mitigate the loss of experienced judges in this District while we await commissions for new district court judges.

MEC Res., LLC v. Apple, Inc., __ F. Supp. 3d __, 2017 WL 4102450, at *5 (D. Del. Sept 18, 2017). Where California is an available and convenient forum for this case, and where court congestion will significantly slow the progress of the case here, I find that this factor weighs slightly in favor of transfer.

c.      *Local Interest in Deciding Local Controversies at Home*

The third public interest factor weighs the local interest in deciding local controversies at home.  Defendants contend that the Northern District of California maintains a strong interest in deciding this case because both Cloudflare and Fastly maintain their principal place of business there, most of their employees live and work there, and this lawsuit calls into question Defendants' reputations.

This factor is typically neutral in the context of patent litigation because "patent issues do not give rise to a local controversy or implicate local interests."  TriStrata Tech., Inc. v. Emulgen Labs., Inc., 537 F. Supp. 2d 635, 643 (D. Del. 2008).   As one Delaware District Court has reasoned:

> Patent cases implicate constitutionally protected property rights. The resolution of patent cases is governed by federal law reviewed by a court of appeals of national (as opposed to regional) stature. Moreover, to characterize patent litigation as "local" undermines the appearance of neutrality that federal courts were established to provide and flies in the face of the national (if not global) markets that are affected by the outcome of these cases.

Helicos Biosciences Corp. v. Illumina, Inc., 858 F. Supp. 2d 367, 375 (D. Del. 2012).  Therefore, while California may maintain some interest in its citizens, this case involves federal law and a product used on a nationwide basis.  I regard this factor as neutral.

d.      *Enforceability of the Judgment, Public Policies of the Fora and Familiarity with Applicable State Law in Diversity Cases*

The remaining three public interest factors consider the enforceability of the judgment in the competing fora, the public policy concerns of the fora, and whether the fora are familiar with the applicable state law in a diversity case.  The parties both contend—and I agree—that these factors are neutral in this case and, therefore, have no bearing on the transfer analysis.

### C. Transfer Analysis Summary

Having considered both the parties' briefing and oral arguments, I find that Defendants have clearly demonstrated that this case could have been brought in the Northern District of California and that the balance of convenience favors transfer. Although Plaintiff's forum preference weighs against a California venue, that preference is given limited deference in light of Plaintiff's lack of a physical presence in its chosen Delaware forum. By contrast, all of the other private interest <u>Jumara</u> factors lean in favor of transfer—including where the claim arose, Defendant's preference, the convenience of the parties, the convenience of the witnesses, and the location of books and records. Finally, although most of the public interest factors are neutral, the influx of new patent cases in the District of Delaware and corresponding decrease in judges available to handle these matters cannot be ignored. Simply put, the <u>Jumara</u> balancing test leads me to conclude that transfer is warranted.

## IV. CONCLUSION

For the reasons discussed above, I will grant both Defendant Cloudflare and Defendant Fastly's Motions and transfer these actions to the Northern District of California pursuant to 28 U.S.C. § 1404(a).