MARGAUX A. SAVEE (SBN 224767)
msavee@polsinelli.com
**POLSINELLI LLP**
Three Embarcadero Center, Ste. 2400
San Francisco, CA 94111
Telephone: (415) 248-2100
Facsimile: (415) 248-2101

STEVEN CALLAHAN
scallahan@ccrglaw.com
ANTHONY M. GARZA
agarza@ccrglaw.com
**CHARHON CALLAHAN ROBSON & GARZA, PLLC**
3333 Lee Parkway, Suite 460
Dallas, Texas 75219
Telephone: (214) 521-6400
Facsimile: (214) 764-8392
*Counsel for Defendant Cloudflare, Inc.*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| BLACKBIRD TECH LLC,<br><br>Plaintiff,<br><br>v.<br><br>CLOUDFLARE, INC.,<br><br>Defendant. | CASE NO. 3:17-CV-06112-VC<br><br>**CLOUDFLARE'S REPLY SUPPORTING MOTION FOR JUDGMENT ON THE PLEADINGS UNDER 35 U.S.C. § 101**<br><br>Hearing: January 11, 2018, 10:00am |

Fastly and Cloudflare's opening briefs demonstrated how the '335 patent failed the two-step *Alice* test for patent eligibility, relying on recent, analogous Federal Circuit opinions, including *Symantec*, *EasyWeb*, *Shortridge*, and *Erie Indemnity*. Blackbird's Response fails to distinguish these cases or undermine their reasoning. As a result, the Court should invalidate the '335 patent.

# I. Argument

## A. The '335 Patent Fails *Alice* Step One

**Blackbird Failed to Distinguish Data-Middleman Decisions that Control the Result.** Blackbird admits that the '335 Patent is directed to a data middleman (or "intermediate networking device") that analyzes and modifies in-transit communications. *See* Resp. at 6 (the patented technology "allows for the modification and inclusion of data by intermediate networking devices that are not intended parties to the original communication."). Cloudflare's opening brief highlighted three opinions from this year where the Federal Circuit invalidated, under § 101, three data-middleman patents that modified in-transit communications between a client and a server: *EasyWeb*, *Smartflash*, and *Clarilogic*. Cloudflare Br. (ECF No. 38) at 5-6.[1] The reasoning is slightly different between cases, but the Federal Circuit found that the technology, in each case, was abstract:

- In *EasyWeb*, the Federal Circuit held that data-analysis patents failed *Alice* step one: "As we have explained in a number of cases, claims involving data collection, analysis, and publication are directed to an abstract idea. . . . Claim 1, unlike the claims found non-abstract in prior cases, uses generic computer technology to perform data collection, analysis, and publication and does not recite an improvement to a particular computer technology." 689 F. App'x at 971.
- In *Smartflash*, claims directed to receiving, validating, and controlling access to data

[1] *EasyWeb Innovations, LLC v. Twitter, Inc.*, 689 F. App'x 969, 970 (Fed. Cir. May 12, 2017) (a message-publishing system acting as a data middleman that "accepts messages in multiple ways, such as by fax, telephone, or email, verifies the message was sent by an authorized sender, and converts and publishes the message on the Internet."); *Smartflash LLC v. Apple Inc.*, 680 F. App'x 977, 978-79, 984 (Fed. Cir. Mar. 1, 2017) (a terminal acting as a data middleman between a data supplier, a data carrier, and a payment validation system); *Clarilogic, Inc. v. FormFree Holdings Corp.*, 681 F. App'x 950, 951-52 (Fed. Cir. Mar. 15, 2017) (a computer acting as a data middleman by (i) receiving a request for "certified financial data," (ii) collecting, transforming, and validating financial data from third-party financial sources, and (iii) generating a report based on the received data).

failed *Alice* step one: "The . . . asserted claims recite methods and systems for controlling access to content data, such as various types of multimedia files, and receiving and validating payment data. As such, the asserted claims are directed to the abstract idea of conditioning and controlling access to data based on payment." *Smartflash*, 680 F. App'x at 982-83.

- In *Clarilogic*, collecting, analyzing, and displaying data failed *Alice* step one: "When the focus of the asserted claims is on collecting information, analyzing it, and displaying certain results of the collection and analysis, the claims are directed to an abstract idea." *Clarilogic*, 681 F. App'x at 954.

To prevail on *Alice* step one, Blackbird must address and distinguish *EasyWeb*, *Smartflash*, and *Clarilogic*, explaining why they do not doom the data-middleman patent at issue. Blackbird failed to do so. Blackbird's only discussion of these cases is a single sentence: "The other cases cited by Cloudflare clearly involved using computers only as tools." Resp. at 12. But Blackbird provides no way to distinguish the technology at issue in *EasyWeb*, *Smartflash*, and *Clarilogic* from the '335 Patent, which also uses an intermediate networking device (or internet browser) to analyze and transform in-transit data. The Court should follow the Federal Circuit's lead from these three recent cases and find that the '335 patent is directed to an abstract idea. *See Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288, 1294 (Fed. Cir. 2016) ("[T]he decisional mechanism courts now apply is to examine earlier cases in which a similar or parallel descriptive nature can be seen . . .").

Nor did Blackbird distinguish *Intellectual Ventures v. Symantec*, 838 F.3d 1307 (Fed. Cir. 2016). Each of the three *Symantec* patents is a close analogue to the technology at issue here, as explained in detail in Fastly's opening brief. Fastly Br. (No. 17-6115, ECF No. 27) at 6-7 ('050 patent, cl. 9); 7-8 ('142 patent, cl. 1); 8-9 ('610 patent, cl. 1). Again, to prevail on *Alice* step one, Blackbird must explain why the same logic does not apply here. Blackbird only states that "nothing in the record in [*Symantec*] indicated that the claimed inventions involved a technical solution to a technical problem." Resp. at 12. Blackbird misses the point—if Blackbird cannot explain why the claimed technology here differs from the claims analyzed in *Symantec*, Blackbird's claims fail *Alice* step one for the same reasons as in *Symantec*, even in the face of Blackbird's dogged assertion that its tech-

nology "improves the functioning of the computer itself." Resp. at 1. In fact, the claims analyzed in *Symantec* are not materially different from the technology here, and Blackbird failed to show otherwise:

- The *Symantec* '050 patent claimed "receiving e-mail (and other data file) identifiers, characterizing e-mail based on identifiers, and communicating the characterization—in other words, filtering files/email." 838 F.3d at 1313. The patent here analyzes in-transit communication in a similar way (using third-party data).
- The *Symantec* '142 patent claimed a "post office" that received email, analyzed the functions or attributes of the email, and referred to "business rules" to determine how to act on the email. 838 F.3d at 1316-17. This is almost exactly the technology claimed in the '335 patent, with a focus on "data communications" instead of email and "business rules" instead of third-party data.
- The *Symantec* '610 patent required a data intermediary to receive computer data travelling between two parties, analyze the data to check for viruses, and inhibit the communication if the intermediary found a virus. 838 F.3d at 1319. This is a more specific version of the technology claimed in the '335 patent, but still failed *Alice*.

Because the '335 patent claims analogous technology to that in all three of the *Symantec* patents, the '335 patent fails *Alice* step one for the same reasons.

Instead of distinguishing the on-point technology in *Symantec*, *EasyWeb*, *Smartflash*, and *Clarilogic*, Blackbird argues that *Bascom* has "more analogous" technology. Resp. at 12. But even if that were true, *Bascom* cannot save Blackbird from *Alice* step one—the Federal Circuit found that the *Bascom* technology was, in fact, directed to an abstract idea (namely, filtering content). *See Bascom Global Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1348 (Fed. Cir. 2016) ("We agree with the district court that filtering content is an abstract idea because it is a longstanding, well-known method of organizing human behavior, similar to concepts previously found to be abstract."). Because Blackbird cannot distinguish its technology from that in *Bascom* and the other cases identified above, the '335 patent fails *Alice* step one.

**Allegedly Detailed Disclosure Does Not Exempt the Patent from *Alice*.** Relying on *DDR*

*Holdings* and *McRO*, Blackbird also argues that the '335 patent survives *Alice* step one because "the technical means by which the objective [modifying in-transit communications using third-party data] is achieved is disclosed and claimed." Resp. at 9. But the allegedly claimed "technical means" are the routine, familiar concepts of receiving, analyzing, and transmitting data: receiving and analyzing communications for a predetermined property, accessing third-party data, modifying the communication "in response to said third-party data," and transmitting the modified communication. *See* cl. 1. The claims do not include detailed technical disclosure on how to accomplish these ends. The claims do not, for example, describe what the third-party data should consist of, how to access it, or how the content of the third-party data limits or informs the "modifying" and "replacing" steps. The claims do not include limitations that could support a finding of patent eligibility. *See Two-Way Media Ltd. v. Comcast Cable Communic'ns, LLC*, 874 F.3d 1329, 1338-39 (Fed. Cir. 2017) (focus on claim, not specification, when analyzing patent eligibility).

Further, *Alice* step one is not satisfied by mere technical detail. Abstract concepts fail *Alice* step one even when the claims include detailed limitations explaining the means by which to implement the technology, as shown by decisions on analogous patents in cases that post-date *DDR Holdings* and *McRO*:

- The *Symantec* '050 patent claimed a particular method of filtering email: (i) using "file content identifier generator agents" to create "file content identifiers" for specific data files (emails), (ii) sending, over a network, those file-content identifiers to a processing system, (iii) using the processing system to analyze the characteristics of the file-content identifier to determine whether it matched characteristics of other identifiers, and (iv) outputting from the processing system to a "source system," responsive to a request, an indication of the characteristics of the data files, based on the analysis. *Symantec*, 838 F.3d at 1313 (cl. 9). The detailed claim elements (including sending and using particular "identifiers" over a network) did not confer patent eligibility—the Federal Circuit found that the claim did not "improve the functioning of the computer itself." *Id.* at 1315.
- In the recent *Secured Mail Solutions LLC v. Universal Wilde, Inc.* case, the patent claimed a particular method of verifying mail: (i) affixing "mail identification data" to a

mail object (email), where the mail identification data consisted of a numeric value assigned by a sender that included, at least, a unique identifier, sender data, recipient data, and shipping-method data, (ii) storing a "verifying portion" of the mail identification data, (iii) receiving an "authenticating portion" of mail-identification data that consists of at least sender data and shipping-method data, and (iv) verifying the email if the authenticating data matched. 873 F.3d 905, 908 (Fed. Cir. 2017). Again, the detailed claim limitations did not confer patent eligibility. The Federal Circuit found the patent abstract, noting that the method was "not limited to any particular technology of generating, printing, or scanning a barcode, of sending a mail object, or of sending the recipient-specific information over a network." *Id.* at 911.

- In *Smart Systems Innovations, LLC v. Chicago Transit Authority*, claim 13 of the '617 patent claimed a particular method of validating entry into a transit system: (i) downloading a list of bankcards that included a "hash identifier" of previously-used bankcards, (ii) reading a currently-used bankcard at a bankcard reader, (iii) generating a "hash identifier" based on the currently-used bankcard, (iv) determining whether the currently-used bankcard is in the downloaded list of bankcards, (v) if not, verifying the currently-used bankcard with a bankcard-verification system, and (vi) denying access if the verification system shows the bankcard as invalid. 873 F.3d 1364, 1370 (Fed. Cir. 2017). The detailed claim limitations did not change the *Alice* analysis. Because the claims were directed to "the collection, storage, and recognition of data," the Federal Circuit found the claims directed to an abstract idea. *Id.* at 1372.

Because the claims recite the familiar concepts of receiving, analyzing, and transmitting data, the claims recite an abstract idea under *Alice* step one.

**The Federal Circuit Considers Brick-and-Mortar Analogies of Software-Implemented Technology.** Blackbird argues that internet technologies, like the '335 Patent, cannot be effectively analogized to the brick-and-mortar context, citing *DDR Holdings*. Resp. at 10. Blackbird ignores the myriad cases raised in Fastly's opening brief that consider such analogies useful in determining ineli-

gibility, including *CyberSource*, *Mortgage Grader*, and *Twilio*. Fastly Br. at 5-6;[2] *see also Symantec*, 838 F.3d at 1317 (analogy to corporate mailroom "useful" in determining eligibility of technology that screens email via a network). Nor does Blackbird counter the analogies between the instant technology and (i) screening of inmate mail by a prison-mail office; (ii) screening of mail between soldiers and their families by the Army; or (iii) inserting local advertisements into national-television broadcasts by regional-television stations. Fastly Br. at 5. Because the '335 patent automates real-world processes, the patent fails *Alice* step one for at least this additional reason.

**B. The '335 Patent Fails *Alice* Step Two**

**Blackbird Failed to Distinguish Conventional-Computer-Component Decisions that Control the Result.** As explained in the opening briefs, the '335 patent's use of conventional computer components (server, client, data channel, processing device, data source) do not satisfy *Alice*'s inventive-concept requirement. Fastly Br. at 11-12; Cloudflare Br. at 8-10 (citing *Credit Acceptance*, *TDE Petro. Data*, *Shortridge*, and *Erie Indemnity*). Blackbird did not attempt to substantively address or distinguish any of the cases relied on by Fastly or Cloudflare, but instead incanted the conclusion that the technology in those cases use computers "simply as tools." Blackbird did not address, for example, why the *Shortridge* and *Erie Indemnity* cases do not control the analysis here.[3] Instead, Blackbird admitted that the allegedly novel "intermediate networking device" was a "router, proxy, or filter"—conventional, known components that do not support a finding of patent eligibility. Resp. at 9. As in the claims in *Shortridge* and *Erie Indemnity*, claims 1, 8, 18, and 24 here invoke generic, conventional computer components and processes to modify in-transit communications between a

---

[2] *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1372 (Fed. Cir. 2011) (technology related to verifying the validity of a credit-card transaction over the Internet); *Mortgage Grader, Inc. v. First Choice Loan Servs., Inc.*, 811 F.3d 1314, 1324 (Fed. Cir. 2016) (computer-implemented system for enabling borrowers to anonymously shop for loan packages offered by multiple lenders); *Twilio Inc. v. Telesign Corp.*, 249 F. Supp. 3d 1123, 1138 (N.D. Cal. 2017) (technology related to delivery of telephony messages over data channels).

[3] *See Intellectual Ventures I LLC v. Erie Indemnity Co.*, 850 F.3d 1315, 1329 (Fed. Cir. 2017) ("[W]e conclude that claimed steps recite no more than routine steps involving generic computer components and conventional computer data processing activities to accomplish the well-known concept of creating an index and using that index to search for and retrieve data."); *Shortridge v. Found. Constr. Payroll Serv., LLC*, 655 F. App'x 848, 853 (Fed. Cir. 2016) (technology failed *Alice* step two when district court found that "the computer components contemplated by the [patent] were conventional and known to the industry at the time of the patent").

client and a server, and thus fail *Alice* step two.

Instead of distinguishing these cases, Blackbird argued that the Court should instead apply the *Virtual Memory* decision. Resp. at 14. But the *Virtual Memory* opinion did not analyze or consider *Alice* step two,[4] and thus does not show how the conventional computer processes and components claimed in the '335 patent survive *Alice* step two, despite *Shortridge*, *Erie Indemnity*, and the other cases on point.[5]

**Blackbird Failed to Show an Inventive Concept.** Blackbird claims that its "inventive concept" is "a processing device distinct from the internet server that is adapted to monitor and detect certain properties in the protocol parameters of the in-transit communications, and if such properties are present, to modify the communications with third party data from a data source." Resp. at 13-14. As a threshold matter, Blackbird misstates the content of the claims. Claims 1, 8, 18, and 24 do not require the device to check "protocol parameters" to determine whether to modify communications. The claims instead check for a "data communication with a **predetermined property**," not a specific data value or heading associated with a particular protocol.[6] *See Two-Way Media*, 874 F.3d at 1338-39 (focus on claim, not specification, when analyzing patent eligibility).

Blackbird's "inventive" concept is still just a device monitoring and modifying in-transit

---

[4] *Virtual Memory LLC v. NVIDIA Corp.*, 867 F.3d 1253, 1262 (Fed. Cir. 2017) ("[W]e need not proceed to step two of the *Alice* test.").

[5] Nor does *Virtual Memory*'s step-one analysis control here. In *Virtual Memory*, the technology covered an improved main memory in a computer. The claimed memory required three different "caches." Unlike conventional memory systems, the technology separated the functionality for each of the three caches, and changed the functionality of those caches based on the type of processor connected to the memory system. This requirement—three distinct memory caches whose functionality can shift depending on the processor—led to the patent-eligibility finding. Here, the claims do not require any sort of bespoke server, distributed-cache functionality, or use of self-referential tables. Rather, the claims apply an age-old concept (analyzing in-transit communications) in a different context (computers and the internet). The technology fails *Alice* step one for the same reasons as in *Symantec*, *EasyWeb*, *Smartflash*, and *Clarilogic*.

[6] In contrast, claims 3 and 21 allow the "predetermined property" to be "application level status codes," or an "HTTP code," but Blackbird does not point to these claims as representative. Of course, even if the representative claims were limited to HTTP or other specific protocols, the limitation would not impart patentability. *See Erie Indemnity*, 850 F.3d at 1328 (limitation of technology to XML tags and metadata is "akin to limiting an abstract idea to one field of use," and does not confer patentability); *Prism Techs. LLC v. T-Mobile USA, Inc.*, 696 F. App'x 1014, 1017-18 (requirement that technology use "identity data" with generic computer components "does not rise to the level of an inventive concept," despite the patentee's argument that the use of "identity data" "represents a specific and novel solution to a real problem and provides real benefits.").

communications with third-party data. This still describes the classic man-in-the-middle paradigm used in reviewing prison mail and Army mail, referred to in the opening briefing. Fastly Br. at 5. The mere fact that the concept was implemented on the Internet, or automated through software, does not provide an "inventive concept" that confers patent eligibility.[7] *See Shortridge*, 655 F. App'x at 853.

***Bascom* Does Not Control.** Cloudflare and Fastly explained why *Bascom* did not control the *Alice* step-two analysis here: (i) unlike the *Bascom* technology, the '335 patent does not require filtering to take place in a particular location, and instead allows filtering by an internet browser or an intermediary device, Fastly Br. at 14-15, Cloudflare Br. at 10; (ii) the '335 patent does not include any element analogous to the *Bascom* limitation requiring "the filtering system to give users the ability to customize filtering for their individual network accounts," Fastly Br. at 15-16, Cloudflare Br. at 10; and (iii) instead, the '335 patent identifies generic, known technical components to implement the relevant technology, Cloudflare Br. at 10.

Blackbird failed to explain why, despite the key factual differences identified by Fastly and Cloudflare, the reasoning in *Bascom* should apply to the *Alice* step-two analysis. Instead, Blackbird argued (in the context of the *Alice* step-one analysis) that the '335 patent "recite[s] even more technical innovation" than *Bascom*—because the '335 patent relies "on the communication's protocol parameters[8] and not merely the content of those communications, the asserted claims are actually tied more closely to the operation of the internet than the *Bascom* claims." Resp. at 12-13. This argument fails on two fronts. First, relying on non-content parameters is not "more innovative"—for example, prisons check whether an envelope is marked with an "attorney correspondence" stamp to prevent

---

[7] Blackbird's Response argues that Cloudflare misstates the invention by stating that the in-transit communications are modified "based on third-party data." Resp. at 14 ("The asserted claims do not recite modifying in-transit communications '**based on third-party data'** . . . "). But this claim limitation is plainly present in the independent claims. *See*, *e.g.*, cl. 1 ("a step selected from the group consisting of the step of modifying said data communication **in response to said third party data** and the step of replacing said data communication **in response to said third party data** . . .").

[8] Again, Blackbird misstates the scope of the claims. The independent claims do not require the device to check "protocol parameters" to determine whether to modify communications. The claims instead check for a "data communication with a predetermined property." *See*, *e.g.*, cls. 1, 18. Data communications may have "predetermined properties," that relate to their content (such as message length), instead of properties that relate to a specific communications protocol.

review of attorney/client privileged communications. But more importantly, the argument does not address the shortcomings noted by Fastly and Cloudflare—Blackbird cannot successfully invoke *Bascom* without addressing how the generic, known components in the ’335 patent map onto the patent-eligible *Bascom* claim limitations. Thus, Blackbird has not shown that *Bascom* controls the analysis here, and the Court should find that the ’335 patent fails *Alice* step two.

### C. Cloudflare’s Patent Is Irrelevant

The Court is bound to apply the Federal Circuit’s interpretation of § 101, as reflected in Federal Circuit opinions. In a tacit acknowledgement that this standard dooms its patent, Blackbird points to a June 2015 Cloudflare patent-prosecution Amendment[9] as authority, arguing that because (i) Cloudflare’s claims there allegedly cover the “same technology” as the ’335 patent, and (ii) Cloudflare argued that its pending claims satisfied § 101, the Court should find Blackbird’s technology to be patent eligible. If the patent eligibility of Cloudflare’s technology were before this Court, Cloudflare would respond on the merits, and show how Cloudflare’s technology is different from Blackbird’s and deserving of patent protection.

But Blackbird’s argument is a distraction. The validity of Cloudflare’s patent is not at issue here. The Court is tasked with determining whether the ’335 patent satisfies *Alice*, irrespective of the validity of Cloudflare’s issued claims. The question of whether Cloudflare’s patent satisfies § 101 must wait for another day.

## II. Conclusion

The ’335 Patent does not claim eligible subject matter under § 101. The Court should render judgment in favor of Cloudflare and dismiss Blackbird’s lawsuit with prejudice.

---

[9] Further, Cloudflare’s argument in amendment relies on the PTO’s 2014 Interim Guidance on Subject Matter Eligibility. *See* Resp. Ex. 4 at 11. The Federal Circuit has since made clear, however, that the PTO’s guidelines and example sets are not binding authority on the Federal courts. *See Intellectual Ventures I LLC v. Erie Indemnity Co.*, 2017 WL 5041460, at *4 (Fed. Cir. Nov. 3 2017) (“*Erie Indemnity II*”). Blackbird cannot undermine the authority of current Federal Circuit decisions by citing to Cloudflare’s arguments based on the now-outdated Interim Guidance.

DATED: January 3, 2018

/s/ Anthony M. Garza

STEVEN CALLAHAN
ANTHONY M. GARZA
**CHARHON CALLAHAN ROBSON & GARZA, PLLC**
3333 Lee Parkway, Suite 460
Dallas, Texas 75219
Telephone: (214) 521-6400
Facsimile: (214) 764-8392

MARGAUX A. SAVEE (SBN 224767)
**POLSINELLI LLP**
Three Embarcadero Center, Ste. 2400
San Francisco, CA 94111
Telephone: (415) 248-2100
Facsimile: (415) 248-2101

*Counsel for Defendant Cloudflare, Inc.*

**SIGNATURE ATTESTATION**

Pursuant to Civil L.R. 5.1, I hereby attest that I have obtained the concurrence in the filing of this document from all the signatories for whom a signature is indicated by a "conformed" signature (/s/) within this e-filed document and I have on file records to support this concurrence for subsequent production for the Court if so ordered or for inspection upon request.

Dated: January 3, 2018

/s/ Margaux A. Savee
Margaux A. Savee

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above and foregoing document has been served on January 3, 2018 to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Civil L.R. 5-1.

/s/ Margaux A. Savee
Margaux A. Savee