Hannah L. Cannom (SBN 245635)
hcannom@wscylaw.com
Bethany M. Stevens (SBN 245672)
bstevens@wscylaw.com
WALKER STEVENS CANNOM YANG LLP
500 Molino Street #118
Los Angeles, CA 90013
Telephone:    (213) 337-4551
Facsimile:    (213) 403-4906
*Counsel for Plaintiff Blackbird Tech LLC*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| BLACKBIRD TECH LLC d/b/a BLACKBIRD TECHNOLOGIES,<br><br>Plaintiff,<br><br>vs.<br><br>CLOUDFLARE, INC.<br><br>Defendant. | CASE NO. 17-CV-06112-VC<br><br>**BLACKBIRD TECHNOLOGIES' SUPPLEMENTAL BRIEF RE: CLOUDFLARE'S MOTION FOR JUDGMENT ON THE PLEADINGS UNDER 35 U.S.C. § 101 (ECF NO. 37)**<br><br>(Tentative) Hearing Date:<br>10:00am, January 25, 2018 |

# TABLE OF CONTENTS

Table of Contents .................................................................................................................... ii

Table of Authorities ............................................................................................................... iii

I. Does Blackbird have any authority besides *Bascom* to support the proposition that the '335 patent is not directed to an abstract idea – specifically the abstract idea of reviewing data and modifying (or replacing) that data based on a set of fixed rules? ............................................. 1

II. Why do the *EasyWeb*, *Smartflash*, and *Clarilogic* cases not control the inquiry into whether the '335 patent is directed to an abstract idea? ...................................................................................................................... 4

III. Why does *Intellectual Ventures v. Erie* not control the outcome of the inventive concept inquiry in this case? .................................................... 6

IV. Why are the ordered combination of steps in the '335 patent claims not analogous to the steps addressed in the patent at issue in *TDE Petroleum*? ................................................................................................... 7

V. Why does *Bascom* support a finding that the '335 patent contains an inventive concept? ..................................................................................... 8

## TABLE OF AUTHORITIES

*Bascom Global Internet Servs., Inc. v. AT&T Mobility LLC,*
  827 F.3d 1341 (Fed. Cir. 2016) .................................................................................. 8-10

*Clarilogic, Inc. v. FormFree Holdings Corp.,*
  681 F. App'x 950 (Fed. Cir. 2017) ................................................................................ 4-6

*DDR Holdings, LLC v. Hotels.com, L.P.,*
  773 F.3d 1245 (Fed. Cir. 2014) ..................................................................................... 10

*EasyWeb Innovations, LLC v. Twitter, Inc.,*
  689 F. App'x 969 (Fed. Cir. 2017) ................................................................................ 4, 5

*Enfish, LLC v. Microsoft Corp.,*
  822 F.3d 1327 (Fed. Cir. 2016) ................................................................................... 1-3

*Finjan, Inc. v. Blue Coat Sys., Inc.,*
  --- F.3d ----, 2018 WL 341882 (Fed. Cir. Jan. 10, 2018) ............................................ 1-3

*Intellectual Ventures v. Erie Indemn. Co.,*
  850 F.3d 1315 (Fed. Cir. 2017) ................................................................................... 6, 7

*McRO, Inc. v. Bandai Namco Games Am. Inc.,*
  837 F.3d 1299 (Fed. Cir. 2016) ................................................................................... 1-3

*Smartflash LLC v. Apple Inc.,*
  680 F. App'x 977 (Fed. Cir. 2017) ................................................................................ 4, 5

*Synchronoss Techs., Inc. v. Dropbox Inc.,*
  226 F. Supp. 3d 1000 (N.D. Cal. 2016) (Gilliam, J.) .................................................. 3, 4

*TDE Petroleum Data Solutions, Inc. v. AKM Enter., Inc.,*
  657 F. App'x 991 (Fed. Cir. 2016) ............................................................................... 7, 8

*Twilio, Inc. v. Telesign Corp.,*
  2017 WL 1208588 (N.D. Cal. Mar. 31, 2017) (Koh, J.) .................................................. 5

*Visual Memory LLC v. NVIDIA Corp.,*
  867 F.3d 1253 (Fed. Cir. 2017) ....................................................................................... 2

Per the Court's Order (ECF No. 79), Plaintiff Blackbird Tech LLC ("Blackbird") submits this Supplemental Brief on Defendant Cloudflare, Inc.'s ("Cloudflare") Motion for Judgement on the Pleadings (ECF No. 37). Blackbird thanks the Court for the opportunity to submit additional briefing and addresses each of the Court's five questions in turn below.

**I.  Does Blackbird have any authority besides *Bascom* to support the proposition that the '335 patent is not directed to an abstract idea – specifically the abstract idea of reviewing data and modifying (or replacing) that data based on a set of fixed rules?**

Yes.  The Federal Circuit has found many times that inventions involving solely the rule-based manipulation of data to be non-abstract under *Alice* step one.  Indeed, even though all software innovations, at some level, invoke rules to manipulate data, the Federal Circuit has unequivocally held that software innovations can be patent eligible, explaining for instance:

> Much of the advancement made in computer technology consists of improvements to software that, by their very nature, may not be defined by particular physical features but rather by logical structures and processes. We do not see in *Bilski* or *Alice*, or our cases, an exclusion to patenting this large field of technological progress.

*Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1339 (Fed. Cir. 2016).  At the same time, the Federal Circuit has cautioned against "describing the claims at such a high level of abstraction and untethered from the language of the claims" since doing so "all but ensures that the exceptions to § 101 swallow the rule." *Id.* at 1337 (rejecting the conclusion that database claims were directed merely to "the concept of organizing information using tabular formats").

For example, in *McRO, Inc. v. Bandai Namco Games Am. Inc.*, the Federal Circuit found that claims directed to "automatically animating lip synchronization and facial expression of three-dimensional characters" in video games and the like were not abstract.  837 F.3d 1299, 1302-03, 1307 (Fed. Cir. 2016) ("[T]he ordered combination of claimed steps, using unconventional rules …, is not directed to an abstract idea.").  Similarly, in *Enfish*, the Federal Circuit found claims reciting "means for configuring [a] memory according to a logical table" were not abstract.  822 F.3d at 1336.  And recently, on January 10, 2018, in *Finjan, Inc. v. Blue Coat Sys., Inc.*, the Federal Circuit found that claims "directed to a method of providing computer security by scanning a downloadable [file]" were not abstract.  --- F.3d ----, 2018 WL

341882, at *2 (Fed. Cir. Jan. 10, 2018). In *McRO*, *Enfish*, and *Finjan*, the claimed inventions were performed entirely by, or contained entirely within, software running on ordinary computers, and thus involved solely the manipulation of data based on rules. *See McRO*, 837 F.3d at 1314; *Enfish*, 822 F.3d at 1339; *Finjan*, 2018 WL 341882, at *2. Yet the Federal Circuit found all of these claims directed to non-abstract ideas because they made "non-abstract improvements to computer technology." *See, e.g.*, *Enfish*, 822 F.3d at 1335-36.

In other cases, as this Court observes, the Federal Circuit has found inventions involving solely the manipulation of data to be abstract. However, all of these cases are reconcilable, since whether the claims manipulate data is simply *not* the touchstone for determining patent eligibility. Rather, as the Federal Circuit explained in *McRO, Enfish,* and *Finjan*, the question is "whether the claims in these patents focus on a specific means or method that improves the relevant technology or are instead directed to a result or effect that itself is the abstract idea and merely invoke generic processes and machinery." *McRO*, 837 F.3d at 1314 (citing *Enfish*, 822 F.3d at 1336); *Finjan*, 2018 WL 341882, at *3 ("The question, then, is whether this behavior-based virus scan ... constitutes an improvement in computer functionality. We think it does."); *Visual Memory LLC v. NVIDIA Corp.*, 867 F.3d 1253, 1258 (Fed. Cir. 2017) ("It [is] appropriate to consider the technological improvement embodied in the claims at [*Alice*] step one …, because *Alice* does not 'broadly hold that all improvements in computer-related technology are inherently abstract and, therefore, must be considered at step two.'").

Thus, according to Federal Circuit precedent, the issue for this Court to decide under *Alice* step one is whether Cloudflare has carried its burden of showing that asserted claims 8 and 24 of the '335 patent are not directed to a specific way of improving computer technologies. If the claims provide such an improvement, they are not abstract, irrespective of whether they solely involve manipulating data.[1] Courts in this District have followed this approach. "*Enfish* teaches that claims are not directed to an abstract idea if their 'plain focus … is on an

---

[1] Whether the claims invoke a "data middleman," as Cloudflare suggests, is likewise irrelevant. Federal Circuit law contains no "data middleman" exception to software patentability, and Cloudflare's theory to the contrary has no basis in fact or law.

BLACKBIRD TECHNOLOGIES' SUPPLEMENTAL BRIEF RE: CLOUDFLARE'S MOTION FOR JUDGMENT ON THE PLEADINGS UNDER 35 U.S.C. § 101 (ECF NO. 37)
- 2 -

improvement to computer functionality' or computer capabilities." *See, e.g.*, *Synchronoss Techs., Inc. v. Dropbox Inc.*, 226 F. Supp. 3d 1000, 1006 (N.D. Cal. 2016) (Gilliam, J.) (finding "[a] method of transferring media data to a network coupled apparatus" to be non-abstract).

To determine whether claims provide such an improvement, the Federal Circuit looks to the specification of the patent at issue to understand the scope and content of the prior art and to determine how the claimed inventions improve on prior art techniques. The Federal Circuit regularly accepts and credits statements in the specification about the prior art and the nature of the claimed inventions' improvement in assessing *Alice* step one. *Enfish*, 822 F.3d at 1335 ("[T]he 'directed to' inquiry applies a stage-one filter to claims, considered in light of the specification, based on whether 'their character as a whole is directed to excluded subject matter.'"); *McRO*, 837 F.3d at 1313 (summarizing the specification's explanation of the prior art and the claimed improvements thereto); *Finjan*, 2018 WL 341882, at *3 ("The 'behavior-based' approach to virus scanning was pioneered by [patent owner] Finjan and is disclosed in the '844 patent's specification."); *Synchronoss*, 226 F. Supp. 3d at 1008-09 (same).

Given that Cloudflare filed a motion for judgment on the pleadings, the record before the Court is limited, and consists solely of Blackbird's Complaint and the '335 patent itself. As Blackbird discussed in its Opposition (ECF No. 77 at 1-7), the specification of the '335 patent explains that, at the time of invention in 1998, internet communications occurred solely between two parties, a client and server, and were handled by "transparent" intermediate networking devices. ('335 Patent, 1:31-50). According to the '335 patent, it was not yet known how to add third-party data to client-server communications since "a logical or physical connection between [those] two parties … [wa]s assumed" (*id.* at 1:32-34), and moreover, it was not yet known how to provide users with additional information about server-related errors or how to use the internet bandwidth that might be freed up by such errors (*id.* at 3:43-65).

But rather than merely reciting "adding third-party data to internet communications" using a computer, asserted claims 8 and 24 offer the specific solution of making intermediate networking devices *non*-transparent and, further, having those devices monitor client-server

communications for certain protocol parameters (not just any data) indicating the status of the internet request, connecting to a database (also "distinct from said internet server") to access the third-party data (*e.g.*, additional information about an error), and modifying the original communication with such data before sending the modified communication to the originally-intended recipient.  The specific requirements of asserted claims 8 and 24 further require that, in the case of server errors causing the "transmission rate of said server to said client [to fall] below a predetermined threshold," "data is only transmitted on said third party data channel," thus allowing the user to receive information even when not provided by the server.  The '335 patent summarizes many additional advantages of the claimed inventions over the prior art, particularly for internet "portals" then-offered by many ISPs.  ('335 Patent, 2:12-64).  This evidence of the '335 patent's improvement to computer technology is undisputed and, indeed, is indisputable in this procedural context.

Thus, "the challenged claims, viewed in light of their … specification[], are not directed to an abstract idea and … [instead] are directed on their face to an improvement in computer functionality." *Synchronoss*, 226 F. Supp. 3d at 1007.  The '335 patent satisfies *Alice* step one.

II. **Why do the *EasyWeb*, *Smartflash*, and *Clarilogic* cases not control the inquiry into whether the '335 patent is directed to an abstract idea?**

Because *EasyWeb*, *Smartflash*, and *Clarilogic* are non-precedential and, unlike the '335 patent, did not involve inventions making specific improvements to computer technologies.

In *EasyWeb*, the Federal Circuit invalidated patents directed to a "message publishing system" for publishing fax or telephone messages, or emails, as webpages.  689 F. App'x 969, *970 (Fed. Cir. 2017).  According to the Federal Circuit, the representative claim in *EasyWeb* "use[d] generic computer technology to perform data collection, analysis, and publication and does not recite an improvement to a particular computer technology." *Id*. at *971.  In short, the invention in *EasyWeb* merely used the internet as a tool, and did not specifically improve the functioning of the internet as the '335 patent does.  In distinguishing the *EasyWeb* patent, Judge Koh of this District has explained that a claim is not abstract simply because it involves

BLACKBIRD TECHNOLOGIES' SUPPLEMENTAL BRIEF RE: CLOUDFLARE'S MOTION FOR JUDGMENT ON THE PLEADINGS UNDER 35 U.S.C. § 101 (ECF NO. 37)

- 4 -

translating information:

> "[C]ourts have previously found that patents involving the transformation and transmission of information in one form or another form constituted abstract ideas." .... This reasoning is inapplicable to the present case. Although claim 13 involves an element of translating information (specifically, translating information from traditional communication networks to modern applications), this is not its sole focus. The Federal Circuit has cautioned that "[t]he 'directed to' inquiry, therefore, cannot simply ask whether the claims *involve* a patent-ineligible concept" because, as *Mayo* observed, "all inventions at some level embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas." Defendant's citation to *EasyWeb* commits precisely this fallacy.

*Twilio, Inc. v. Telesign Corp.*, 2017 WL 1208588, at *28 (N.D. Cal. Mar. 31, 2017) (internal citations omitted). Judge Koh found non-abstract a claim "allowing a modern application server—which runs software and communicates using a higher-level, application layer protocol like HTTP—to communicate with and perform actions upon a traditional telephony session." *Id.* at *25. Judge Koh found an "improvement in computer functionality" in this claim, which she explained was the relevant inquiry under *Alice* step one. *Id.* at *26.

Here, the asserted claims of the '335 patent likewise improve computer functionality, as explained in Blackbird's Opposition (ECF No. 77 at 9-11), and are therefore patentable.

*Smartflash* and *Clarilogic* are also readily distinguishable with the "technological improvement" framework in mind. In *Smartflash*, the Federal Circuit **distinguished** claims whose "focus" is "the specific asserted improvement in computer capabilities," which are patentable, from claims that "invoke computers merely as tools to execute fundamental economic practices," which are not. 680 F. App'x 977, *982 (Fed. Cir. 2017). Because "the [*Smartflash*] claims [we]re directed to the abstract idea of conditioning and controlling access to data based on payment," they invoked computers only as tools to execute fundamental economic practices and were thus unpatentable. *Id.* at *983. Similarly, in *Clarilogic*, the Federal Circuit applied the same framework and invalidated a claim directed to "the abstract idea of gathering financial information of potential borrowers." 681 F. App'x 950, *954 (Fed. Cir. 2017).

Here, it is undisputed that the '335 patent does *not* put a fundamental economic practice on the internet. *Smartflash* and *Clarilogic* therefore do not control. The fact that the *Smartflash*

and *Clarilogic* claims manipulated data was *not* the reason they were unpatentable; rather, they were unpatentable because they did not improve computers, merely used them.

### III. Why does *Intellectual Ventures v. Erie* not control the outcome of the inventive concept inquiry in this case?

If *Alice* step two is reached (which it should not be, since the claims are not abstract under *Alice* step one, as explained above), the asserted claims reveal an inventive concept because they recite *how* to add third-party data while improving internet bandwidth utilization.

As this Court observes, in *Intellectual Ventures v. Erie*, the Federal Circuit invalidated claims in which XML tags were used to build a database index. 850 F.3d 1315, 1328 (Fed. Cir. 2017). By way of background, in considering *Alice* step one, the Federal Circuit distinguished the *Intellectual Ventures* claims from the *Enfish* claims, which also related to databases. *Id.* at 1327-28. The Federal Circuit observed that "[t]he [*Intellectual Ventures*] claims are not focused on *how* usage of the XML tags alters the database in a way that leads to an improvement in the technology of computer databases, as in *Enfish*. The claims simply call for XML-specific tags in the index without any further detail." *Id.* at 1328. Thus, at *Alice* step two, given that the *Intellectual Ventures* claims were found in step one to be directed to the abstract idea of "creat[ing] an index used to search and retrieve information stored in a database," "limiting the index to XML tags certainly narrows the scope of the claims [but] is simply akin to limiting an abstract idea to one field of use." *Id.* at 1327-28.

That is not the case here. The abstract idea suggested by the Court – "reviewing data and modifying (or replacing) that data based on a set of fixed rules" – does not specify the mechanism by which the modification is to take place or, more precisely, the nature of the "fixed rules" that govern modification. But the asserted claims do. They recite an intermediate networking device that looks to the protocol parameters of the in-transit communications to determine whether modification is necessary. The asserted claims here do *not* recite modifying only HTML- or XML-based communications, which would merely limit the alleged abstract idea to HTML or XML but, per *Intellectual Ventures v. Erie*, would not save patentability. Rather,

the asserted claims recite that an intermediate networking device monitoring and detecting protocol parameters (*e.g.*, HTML tags) is *how* conventional internet communications can be modified and, ultimately, *how* the claimed inventions lead to an improvement in computer technology.  That is precisely what was missing in *Intellectual Ventures v. Erie*.

Of course, *Intellectual Ventures v. Erie* says nothing about the additional requirements of asserted claims 8 and 24.  Claim 24, for instance, recites "[t]he apparatus of claim 18, wherein data is only transmitted on said third party data channel when the data transmission rate of said server to said client is below a predetermined threshold."  Read together with claim 18, claim 24 as a whole recites an invention in which an intermediate networking device detects a protocol parameter indicating that the server is experiencing an error causing the data transmission rate between the server and client to fall below a certain threshold and, in that case, only to transmit data to the client from the third-party data source, as data is no longer being transmitted between client and server.  Considering again the abstract idea suggested by the Court, it does not address this aspect of the claimed inventions.  Dependent claims 8 and 24 explain *how* the detection of certain transmission rate-related errors reflected in protocol parameters can be used to improve internet bandwidth utilization.  Thus, dependent claims 8 and 24 provide "an explanation of the 'mechanism' for 'how the result is accomplished,'" and thus supply an inventive concept. *Intellectual Ventures v. Erie*, 850 F.3d at 1331-32.

### IV. Why are the ordered combination of steps in the '335 patent claims not analogous to the steps addressed in the patent at issue in *TDE Petroleum*?

Because the asserted claims of the '335 patent provide an inventive contribution to the field of internet communications and thus supply an inventive concept to any abstract idea, whereas the claims in the non-precedential *TDE Petroleum* case did not recite anything inventive to improve computer technology.

In *TDE Petroleum*, the Federal Circuit invalidated a claim reciting "[a]n automated method for determining the state of a well operation."  657 F. App'x 991, *992 (Fed. Cir. 2016). While the *TDE Petroleum* claims involved "data analysis," *id.* at *933, so too did the claims in

*Enfish*, *McRO*, and *Finjan* (step one cases) and *DDR Holdings* and *Bascom* (step two cases). The problem with the *TDE Petroleum* claims was that the recited data analysis was "ordinary." 657 F. App'x at *993. The claims failed to do anything inventive to computer technology, as ordinary data analysis steps were combined in the ordinary way to accomplish the abstract purpose. "The claims of the [*TDE Petroleum*] patent recite the *what* of the invention, but none of the *how* that is necessary to turn the abstract idea into a patent-eligible application." *Id.*

By contrast, the data analysis performed by the intermediate networking devices claimed in the '335 patent is *not* ordinary. At the time of invention, the "ordinary" way for an intermediate networking device to handle internet communications was simply to forward them. ('931 patent, 1:37-44). The claimed inventions depart from this practice by using an intermediate networking device to monitor internet communications' protocol parameters and to modify the communications if certain parameters are detected. While internet-connected intermediate networking devices or the detection or modification of data may have been known individually, the '335 patent explains that it was *not* known that the *combination* of these elements could be used to modify internet communications with third-party data. Likewise, while using available internet bandwidth was known, it was *not* known that the *combination* of detecting transmission rate-reducing errors based on protocol parameters could be used as the basis to determine whether to incorporate third-party information. Put simply, the asserted claims of the '335 patent provide the "*how*" to an improvement in computers. The *TDE Petroleum* claims did not.

**V.    Why does *Bascom* support a finding that the '335 patent contains an inventive concept?**

Because, whatever abstract idea is said to be found in the asserted claims of the '335 patent (*e.g.*, modifying in-transit data), "[t]he claims [of the '335 patent] do not merely recite the abstract idea … with the requirement to perform it on the Internet, or to perform it on a set of generic computer components." *Bascom*, 827 F.3d 1341, 1350 (Fed. Cir. 2016). As the Court observes, "[t]he inventive concept described and claimed in the [*Bascom*] patent is the

installation of a filtering tool at a specific location, remote from the end-users, with customizable filtering features specific to each end user." (Order re: Suppl. Briefing, ECF No. 79 (quoting *Bascom*, 827 F.3d at 1350)). As in *Bascom*, the asserted claims of the '335 patent accomplish the rules-based modification at a specific location – at the ISP server in *Bascom*, and at "a processing device distinct from said internet server," as expressly recited in the asserted claims of the '335 patent[2] – and in a specific way – by associating filtering schemes with users in *Bascom*, and by monitoring protocol parameters and specifically error messages related to low data transmission rates, and inserting content only when such rules are met in the '335 patent. Accordingly, here, as in *Bascom*, "the claims [do not] preempt all ways of [modifying in-transit data] on the Internet; rather, they recite a specific, discrete implementation of the abstract idea of [modifying in-transit data]." *Bascom*, 827 F.3d at 1350

Respectfully, it is not true that the "claims of the '335 Patent … cover almost any means of analyzing and modifying data between a server and client." (*See* Order re: Suppl. Briefing, ECF No. 79 at 3). Rather, the asserted claims cover *one* way of modifying such data – by looking at the protocol parameters of client-server internet communications for specific error codes related to data transmission rates (and not, for example, other protocol parameters or content-related parameters) and inserting third party data into the communication pathway in that event. Moreover, according to the specification of the '335 patent – which *must* be "construed in favor of [Blackbird] the nonmovant," *see Bascom*, 827 F.3d at 1350 – the technological means for modifying data between a server and client did not exist in the prior art. ('335 Patent, 1:31-51, 2:12-63). Thus, as in *Bascom*, "[b]y taking a prior art [data pathway] solution [end-to-end internet communication immune to in-transit modification] and making it more dynamic and efficient [by introducing the ability of an appliance in the existing data pathway to modify the communications under certain circumstances] the claimed invention represents a 'software-based invention[] that improve[s] the performance of the computer system itself.'" 827 F.3d at 1351.

---

[2] Indeed, the '335 patent repeatedly refers to the server as "remote" relative to the processing device. (*See, e.g.*, '335 Patent, 2:18, 4:1).

BLACKBIRD TECHNOLOGIES' SUPPLEMENTAL BRIEF RE: CLOUDFLARE'S MOTION FOR JUDGMENT ON THE PLEADINGS UNDER 35 U.S.C. § 101 (ECF NO. 37)

In finding an inventive concept in *Bascom*, the Federal Circuit relied on its earlier decision in *DDR Holdings*, where the appeals court likewise found an eligibility-conferring inventive concept in patents "directed to systems and methods of generating a composite web page that combines certain visual elements of a 'host' website with content of a third-party merchant." *Bascom*, 837 F.3d at 1351 (discussing *DDR Holdings*, 773 F.3d 1245 (Fed. Cir. 2014)). In finding an inventive concept in *DDR Holdings*, the Federal Circuit observed:

> The '399 patent's claims … do not broadly and generically claim "use of the Internet" to perform an abstract business practice (with insignificant added activity)…. [T]he claims at issue here specify how interactions with the Internet are manipulated to yield a desired result—a result that overrides the routine and conventional sequence of events ordinarily triggered by the click of a hyperlink. Instead of the computer network operating in its normal, expected manner by sending the website visitor to the third-party website that appears to be connected with the clicked advertisement, the claimed system generates and directs the visitor to the above-described hybrid web page that presents product information from the third-party and visual "look and feel" elements from the host website. When the limitations of the '399 patent's asserted claims are taken together as an ordered combination, the claims recite an invention that is not merely the routine or conventional use of the Internet.

*Id.* at 1259-60. As the Court in *Bascom* observed, the *DDR Holdings* patents "claim[ed] a technical way to satisfy an existing problem for website hosts [*i.e.*, servers] and viewers [*i.e.*, clients]." *Bascom*, 837 F.3d at 1351.

Here, in the same way, the asserted claims of the '335 patent specify intermediate networking devices innovatively combined with software to provide third-party data in the event of certain errors occurring between website hosts and viewers, clearly departing from how the internet previously worked. The inventive arrangement claimed in the '335 patent represents a technical way to satisfy the problem in the prior art that, in the event of such errors, website viewers were left without any explanation of such errors while simultaneously wasting valuable internet bandwidth. The asserted claims of the '335 patent use specific technology to address and overcome these problems, and are therefore eligible for patent protection.

Dated this 15th day of January, 2018        WALKER STEVENS CANNOM YANG LLP

　　　　　　　　　　　　　　　　　　　　　　 */s/ Bethany M. Stevens*
　　　　　　　　　　　　　　　　　　　　　　　　Bethany M. Stevens

　　　　　　　　　　　　　　　　　　　　　 *Counsel for Plaintiff Blackbird Tech LLC*

BLACKBIRD TECHNOLOGIES' SUPPLEMENTAL BRIEF RE: CLOUDFLARE'S MOTION FOR JUDGMENT ON THE PLEADINGS UNDER 35 U.S.C. § 101 (ECF NO. 37)

- 11 -